**NASSAU BOWLING PROPRIETORS ASSOCIATION, et al., Plaintiffs,**

v.

**The COUNTY OF NASSAU, et al., Defendants.**

**No. 96–CV–2535 (DRH).**

United States District Court, E.D. New York.

May 29, 1997.

Arthur Kremer, Kenneth A. Novikoff, Rivkin, Radler & Kremer, Uniondale, NY, for Plaintiffs.

Gerard Giuliano, Deputy County Atty., Owen Walsh, Nassau County Atty., Mineola, NY, for Defendants.

Carter, Ledyard & Milburn, New York City by Stephen L. Kass, Kikelomo O. Olosunde, for Amici Curiae The American Heart Association, The American Cancer Society, The American Lung Association, The League of Women Voters of New York State, and The League of Women Voters of Nassau County.

HURLEY, District Judge.

Presently pending before the Court in the above-captioned case is the motion of Plaintiffs for summary judgment and the cross-motion of Defendants for summary judgment. As set forth more fully below, Plaintiffs' motion is granted, and Defendants' motion is denied. Defendants are permanently enjoined from enforcing the Ordinance at issue.

## BACKGROUND

Plaintiffs, the Nassau Bowling Proprietors Association and the owners of numerous bowling centers located in Nassau County, challenge the legality of Article VIII of the Nassau County Public Health Ordinance, Regulation of Smoking, promulgated by Defendant Nassau County Board of Health (the "Board"). The Ordinance prohibits, *inter alia*, smoking in bowling centers except in designated enclosed and separately ventilated areas. It also allows the Commissioner of Health, or a person designated by the Commissioner, to grant a waiver of the no-smoking provision under certain circumstances.

The Board first passed a no-smoking ordinance in 1987; that ordinance was substantially amended on January 22, 1996 (the "January Ordinance"), prompting the present litigation. The Court was first called upon to address the sufficiency of the revised enactment on June 27, 1996, at which time oral arguments were heard from Plaintiffs and Defendants on Plaintiffs' application for a temporary restraining order to prevent implementation of the January Ordinance. Thereafter, Defendants agreed to stay the effective date of the January Ordinance pending a hearing on the application for a preliminary injunction. That hearing was not held, however, because the Board repealed the January Ordinance and enacted in its stead, on July 16, 1996, an ordinance (the "July Ordinance") which, for present purposes, is virtually identical to its predecessor. By action taken on September 17, 1996, the Board suspended the effective date of the July Ordinance until such time as this Court renders a decision on the pending motions for summary judgment.

It is the current ordinance, i.e., the July Ordinance (the "Ordinance"), which is the subject of this decision. However, since the January Ordinance and the July Ordinance share a common administrative history, events preceding the January enactment require discussion.

The Board, as explained by its Chair, took action in 1996 because:

Since our last ordinance was adopted there has been additional information developed on the effects of second hand smoke and so the Board of Health felt it was time to review the situation again, especially since our neighbors to the West, New York City, and to the East, Suffolk, have revised their ordinances as well.

(Novikoff Aff., Ex. M at 4.)

The Preamble to the Ordinance identifies that concern, i.e., about second-hand smoke, as the purpose underlying the enactment. (Ordinance, §§ 1 and 2.)

In pursuing its goal, the Board acted independent of any specific legislation or, indeed, guidelines or input from the Nassau County Legislature, which body apparently has not addressed the issue. Rather, the Board acted under general authority delegated to it under state law (*see* N.Y. Pub. Health Law

§ 347 (McKinney 1990)), and under the Nassau County Charter (Article IX, §§ 902 and 903, establishing the Board of Health) and related Administrative Code provisions (Chapter IX, Title C, § 9–20.0, empowering the Board to enact rules and regulations protecting the health of County residents).

The question before the Court, however, is not whether the Board has the authority to regulate smoking in public places based on considerations of health, but whether in passing this Ordinance—with significant exceptions based on non-health related concerns—it exceeded its administrative powers.

On May 16, 1997, the Court heard oral argument on the instant summary judgment motions.

### DISCUSSION

#### I. Issues to be Addressed

The motions submitted by the parties present numerous issues of federal constitutional law and state law. Specifically, Plaintiffs challenge the Ordinance as violative of both the Equal Protection Clause of the Fourteenth Amendment and the substantive due process protections of the Fourteenth Amendment. Plaintiffs also challenge the Ordinance as improper under the law of the State of New York. Because the issue of the legality of the Ordinance under New York law is a threshold issue which, if decided in favor of Plaintiffs, would obviate the need to reach the constitutional issues, the Court focuses its discussion on that issue.

The Court notes that the instant motions do not present the question of the wisdom of the regulation of smoking by an entity which has authority to enact such regulations and does so in conformity with applicable law. The health concerns related to smoking have been recognized by all parties to this action and have led legislatures around the country to impose limits on smoking in public areas.

#### II. Standards on a Motion for Summary Judgment

A party should be granted summary judgment only when its moving papers show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of relevant facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). In addition, "not only must there be no genuine issue as to evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Id.* Summary judgment is proper if there is insufficient evidence for a reasonable jury to return a verdict for the non-movant. *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 580 (2d Cir.1991).

With these principles in mind, the Court turns to a discussion of the issues in the case at bar.

#### III. Legality Under New York State Law

##### A. The Positions of the Parties

■ As noted above, the preliminary issue to be addressed in this decision is the legality of the Ordinance under the law of New York State. For the reasons set forth below, the Court finds that the Board's Ordinance was promulgated by the Board in violation of state law. The Court in its inquiry focuses its attention on the Ordinance itself and the classifications and exclusions contained therein. Also critical to the Court's analysis is a case of the New York Court of Appeals, *Boreali v. Axelrod*, 71 N.Y.2d 1, 523 N.Y.S.2d 464, 517 N.E.2d 1350 (1987). This Court looks to decisions of the New York Court of Appeals to "ascertain and interpret controlling state law." *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.Supp. 285, 292 (S.D.N.Y.1995).

In their motion for summary judgment, Plaintiffs argue that the Ordinance was improperly passed, citing the standards set forth in *Boreali*. Plaintiffs also argue that the Ordinance is improper under New York Public Health Law section 1399–x, passed after *Boreali*, which prohibits the State Public Health Commission ("PHC") from promulgating any "rules or regulations that create, limit or enlarge any smoking restric-

tions." N.Y. Pub. Health Law § 1399–x (McKinney 1990). (Pls.' Reply at 1–4.)

In response, Defendants argue that the Board promulgated the Ordinance with authority under the relevant delegation statute, Public Health Law section 347. N.Y. Pub. Health Law § 347. Further, Defendants cite Public Health Law section 1399–r, which provides, *inter alia*, that a county is not prohibited from adopting and enforcing a local law, ordinance, or regulation which deals with smoking. N.Y. Pub. Health Law § 1399–r (McKinney 1990).

### B. Boreali v. Axelrod

In *Boreali v. Axelrod*, the New York Court of Appeals held that the State Public Health Council ("PHC") improperly promulgated a no-smoking code. The code at issue in *Boreali* prohibited smoking in a variety of public areas; however, like the instant Ordinance, it contained certain areas in which smoking was permissible, including private homes, bars, and restaurants with seating capacities of less than fifty. *Boreali*, 523 N.Y.S.2d at 467, 517 N.E.2d at 1352–53.

The court found that the PHC acted in excess of its statutory authority and beyond what is permitted by the New York State Constitution. The *Boreali* court considered the following circumstances to be important: (1) the PHC created a "scheme laden with exceptions based solely on economic and social considerations;" (2) the PHC did not simply "fill in the details of broad legislation;" (3) the agency acted in an area in which the legislature had already attempted, but failed, to pass legislation; and (4) no "special expertise or technical competence in the field of health was involved in the development of the regulations." *Id.* at 471, 517 N.E.2d at 1356.

In concluding that the PHC's promulgation of the smoking restrictions exceeded its delegated authority, the Court of Appeals noted that "the scope of the Council's authority must be deemed limited by its role as an administrative, rather than a legislative,

body." *Id.* at 466, 517 N.E.2d at 1351. The court continued, "striking the proper balance among health concerns, cost and privacy interests . . . is a uniquely legislative function." *Id.* at 470, 517 N.E.2d at 1355.

### C. Application of Boreali to the Instant Case

Although *Boreali* involved a state regulation and the instant application involves a county ordinance, the principles set forth in *Boreali* are equally applicable to the case at bar.

Most importantly, the Ordinance at issue here contains significant classifications which do not appear to be based on health concerns—the exclusive area in which the Board has been delegated authority to act. Plaintiffs' papers set forth numerous examples of the Board's consideration of matters other than health concerns. For example, the Board introduced the "Cornell study," a study addressing the economic implications of New York City's no-smoking regulations, into the Board's record. (Aug. 8, 1996 Kenneth A. Novikoff Aff. ("Novikoff Aff."), Ex. P.) Further, meetings were held with representatives of restaurants, diners, bowling alleys, motels and marinas to discuss the proposed ordinance. (*Id.*, Ex. D.) Meetings were also held with representatives of Nassau Community College and Hofstra University, both of which reportedly did not believe it "feasible" to ban smoking on their campuses.[1] (*Id.*, Ex F.)

At Board meetings, matters other than health concerns were discussed regularly. At the July 17, 1995 Board hearing, Chairman Lister, while noting that the Board's job is a "health one," stated that the Board was protecting the "health of those people who do not desire to breathe second-hand smoke . . . but at the same time considering the well-being of those who do not favor smoking ordinances, so the board has to put all these factors together." (*Id.*, Ex. N at 5.) Chairman Lister indicates that this comment was "intended to portray this Board's obligation

---

**1.** Additionally, the Board received public opinion polls conducted by the Department of Health which surveyed Nassau County residents as to their views on smoking restrictions (Novikoff Aff., Ex. G.), although Chairman Lister indicates that the Board did not consider the survey information in promulgating the Ordinance. (Nov. 20, 1996 Bruce A. Lister Aff. ("Lister Aff.") at 9.)

to protect smokers and non-smokers alike." (Lister Aff. at 8.) At the first public hearing on the ordinance, Chairman Lister noted that "we don't want to violate the rights anymore [sic] than necessary of those who like to smoke. Their desire to smoke is entirely their own business." (Novikoff Aff., Ex. M at 4.) The minutes of the June 20, 1995 Board meeting indicate that "[w]ork and leisure environments, health concerns and a fair economic playing field were the chief areas of discussion." (*Id.*, Ex. J.)

Had the divergent, non-health based concerns addressed so extensively during the administrative hearing process not been reflected in the resulting ordinance, the present challenge would be unavailing. But such is not the case. For example, consider the following exception:

> Smoking restrictions in this Article will not apply to those separately enclosed and separately ventilated portions of a facility in which private social functions are being held and seating arrangements are under the control of the sponsor of the function and not the owner or operator of the facility.

(Ordinance, § 4(E).)

The above provision is not based on health concerns. All in attendance at such gatherings will be exposed to second-hand smoke, and its concomitant hazards, if smoking is permitted. The nature of risk does not depend on who prepares the guest list or seating arrangements. Granted, such affairs may be more akin to parties held in private homes and thus appropriately treated as such. But if such a distinction is to be drawn, it is for elected officials, not administrators, to do so, for it involves the balancing of competing social interests only one of which implicates health. Similarly, Defendants are unable to articulate an explanation for bars and taverns being exempted from the Ordinance which does not include partial reliance on non-health considerations.

Further evidence of the Board's usurping what is appropriately a legislative function was highlighted during oral argument on May 16, 1997. The Court questioned counsel for Defendants as to the Board's rationale for excluding bars and taverns from the smoking restrictions. Counsel responded that the Board had adopted the classifications set forth by the legislature of the State of New York in the state law restricting smoking use. Because bars and taverns are excluded from smoking restrictions under state law, the Board similarly excluded them. This same explanation is presented in Defendants' memorandum, where Defendants note that in promulgating the Ordinance, the Board did not act "in a vacuum or on a clean slate," but rather used the state statute as a guide. (Defs.' Mem. at 17.)

Counsel's argument on this issue underscores the problem with the Board's Ordinance. The very classifications adopted by the Board had been passed by the state *legislature* after, presumably, the legislature's weighing of factors traditionally considered by an elected body. Unlike the Board, which has authority to deal only with health issues, a legislature may consider issues as diverse as economic interests and privacy concerns, in addition to health issues.

█ In sum, the Board—in enacting an ordinance which includes significant provisions based on non-health related considerations—exceeded its authority as an administrative, as distinct from a legislative, body.

█ The Court does not suggest that the Board may not regulate smoking in accordance with the delegation statute which gives it power to regulate health matters. Indeed, it is accepted that it may do so, and perhaps could promulgate a no-smoking ordinance with exceptions related to health concerns. What is improper, however, is the weighing and balancing of other significant concerns not within the ambit of authority delegated to the Board. No doubt incidental consideration of practical concerns, which could include economic matters, may be required in the Board's regulation of health matters. However, in the Court's opinion, the distinctions at issue here are more than *de minimis* or incidental to the Board's legitimate function.

Public Health Law section 347—an otherwise permissible enabling statute—may not be construed as broadly as Defendants propose. *See Boreali*, 523 N.Y.S.2d at 468, 517

N.E.2d at 1353 ("[E]nactments conferring authority on administrative agencies in broad or general terms must be interpreted in light of the limitations that the Constitution imposes." (citing New York Constitution, Art. III, Section 1)). Like the PHC in *Boreali*, the Board has exceeded its statutory authority and has violated the state principle of separation of powers.

### D. Additional Statutory Issues

In light of the above, the Court need not reach Plaintiffs' argument that the Ordinance is improper under Public Health Law 1399–x, which prohibits the New York State PHC from enacting regulations which restrict smoking. With regard to Defendants' argument that Public Health Law 1399–r authorizes the Ordinance, the Court notes that this section does not provide additional authority to the Board, and it plainly does not authorize action inconsistent with the delegation statute or the New York State Constitution.

### CONCLUSION

No factual issues exist here which would preclude summary judgment. For the reasons set forth above, the Court grants Plaintiffs' motion for summary judgment and denies Defendants' cross-motion. Defendants are permanently enjoined from enforcing the Ordinance. As to the other claims set forth by Plaintiffs, the Court has not reached these claims, because its decision on the state law issue provides Plaintiffs with the relief sought.

SO ORDERED.