105 F.Supp.2d 258 (2000)
Michael J. LEONARD; J-Len, Inc. d/b/a Greenbaum & Gilhooley's; Pangregorian Enterprises, Inc.; Poughkeepsie River District Business Association, Inc.; C's Inc. d/b/a C's Restaurant & Lounge; Inc. d/b/a The New Poughkeepsie Diner; Charlie's Too, Inc. d/b/a Charlie's Too; Ford's Restaurant & Tavern Assoc., Inc. d/b/a Gene 1900 Restaurant; T.J.M. Restaurant Corp. d/b/a Hobnobbin' Pub; R.L.W.S., Inc. d/b/a Spanky's Restaurant; Gentleman Jim's Restaurant, Inc. d/b/a Gentleman Jim's; Edwin D. Beck, Inc. d/b/a Easy Street Restaurant; KSC of Dutchess, Inc. d/b/a Goodfella's Inn; Pawling Tavern, Inc. d/b/a Pawling Tavern; Cornerstone Restaurant, Inc. d/b/a Cornerstone Restaurant; Southern *259 Dutchess Bowl, Inc. d/b/a Southern Dutchess Bowl; Taft Avenue Lanes, Inc. d/b/a Hoe-Bowl Family Recreation Centers; Elizabeth Castiglia; and National Smokers Alliance, Plaintiffs,
v.
The DUTCHESS COUNTY DEPARTMENT OF HEALTH, Michael C. Caldwell, Commissioner, Dutchess County Board of Health, Anne E. Dyson, Helen Fuimarello, Joy Godin, Suzanne Horn, Raymond Koloski, Peter J. Leadley, Harry J. Lynch, Lila Matlin and Ralph Middleton, In Their Official Capacities as Members of the Dutchess County Department of Health, Defendants.
No. 99 Civ. 11886 WCC.
United States District Court, S.D. New York.
July 11, 2000.
Phillips, Lytle, Hitchcock, Blaine & Huber LLP, Buffalo, New York, John M. Curran, William P. Keefer, of counsel, for plaintiffs.
Bleakley Platt & Schmidt, LLP, White Plains, New York, Timothy P. Coon, of counsel, for defendants.

*260 OPINION AND ORDER
WILLIAM C. CONNER, Senior District Judge.
Plaintiffs herein, restauranteurs, owners of bowling centers and members of the National Smokers' Alliance, bring the instant action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 and for attorney's fees pursuant to 42 U.S.C. § 1988 against the Dutchess County Department of Health; its commissioner, Michael C. Caldwell; the Dutchess County Board of Health (the "Board"); and, in their official capacities, board members Anne E. Dyson, Helen Fuimarello, Joy Godin, Suzanne Horn, Raymond Koloski, Peter J. Leadley, Harry J. Lynch, Lila Matlin and Ralph Middleton (collectively, "defendants"). Plaintiffs allege that defendants' promulgation of certain smoking regulations has denied them equal protection and their right to free speech and violated 42 U.S.C. § 1983, the New York State Constitution and Article 78 of the New York State Civil Practice Law and Rules. Defendants now move to dismiss the amended complaint pursuant to Fed. R.Civ.P. 12(c), claiming that insofar as plaintiff's federal claims fail to state a claim for which relief may be granted, this Court lacks subject matter jurisdiction over the instant action. Plaintiffs move for summary judgment. In addition, plaintiffs seek injunctive relief restraining the Board from enforcing the regulations. For the reasons that follow, defendants' motion, which we will treat as a motion for summary judgment, is denied. Plaintiffs' motion for summary judgment is granted and defendants are permanently enjoined from enforcing the regulations at issue.

BACKGROUND
The following facts, which are not in dispute, are gleaned from the parties' Rule 56.1 Statements and exhibits attached to plaintiffs' notice of motion and adopted by defendants.
On July 5, 1989, the New York State Legislature passed Smoking-Regulation in Certain Public Areas, Chapter 244, an act amending the Public Health Law (the "Clean Indoor Air Act"). 1989 N.Y.Laws 244.
Defendant Caldwell was appointed Commissioner of Health for Dutchess County in August 1994. Shortly after Caldwell joined the Department of Health, the Board began looking into ways of restricting access to tobacco products by minors.
In May of 1998, a bill excluding minors from designated public smoking areas failed to make it out of a committee of the Dutchess County Legislature. In August of 1998, the Board formed a Tobacco Committee to draft a proposed amendment to the Dutchess County Sanitary Code that would regulate indoor environmental tobacco smoke ("ETS"). A draft was prepared and submitted to the County Attorney's Office and to the State Health Department for review. Some modifications were made to the draft based on their recommendations.
A public hearing on the Board's proposed amendment to the Dutchess County Sanitary Code, Article 26, Smoking in Public Places, began on March 5, 1999 and was continued on April 6, 1999. The Board also solicited written comments. At a meeting of the Board on May 20, 1999, the Board voted to table the issue, refer the issue to the Tobacco Committee for a review of the public comments on the proposal, and collect information on litigation in other New York counties based on similar regulations adopted by other boards of health. At a June 17, 1999 Board meeting, the Board voted to amend the draft regulation based on the Tobacco Committee's recommendations and the advice of counsel. The Board voted six to three to pass Article 26 amending the Sanitary Code at their regular meeting on August 19, 1999.

DISCUSSION

I. Subject Matter Jurisdiction

Defendants move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), claiming that in so far "as plaintiffs' federal *261 claims fail to state a claim upon which relief may be granted, this Court does not have subject matter jurisdiction over the action." (Defs.' Mem.Supp.Mot. Dismiss at 2.)
As an initial matter, we hold that this Court has subject matter jurisdiction over the instant action. Plaintiffs' first claim for relief is based upon alleged violations of the Equal Protection Clause of the Fourteenth Amendment; plaintiffs' second and fourth claims arise under 42 U.S.C. § 1983; and plaintiffs' third claim alleges violations of the Free Speech Clause of the First Amendment. Accordingly, this Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331.
The Court may exercise supplemental jurisdiction over plaintiffs' related claims arising under New York State law pursuant to 28 U.S.C. § 1367. A district court has supplemental jurisdiction over claims that are so related to a claim over which it has original jurisdiction that it forms part of the same case or controversy. 28 U.S.C. § 1367(a). There are four circumstances under which supplemental jurisdiction may be declined:
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).
For reasons related to judicial economy, convenience, fairness and comity, this Court has determined that it is appropriate to exercise its supplemental jurisdiction over plaintiffs' state law claim. See generally Justiana v. Niagara County Dep't of Health, 45 F.Supp.2d 236 (W.D.N.Y.1999) (exercising supplemental jurisdiction over plaintiffs' non-delegation state law claim based on principles of judicial economy, convenience, fairness and comity after finding plaintiff's Equal Protection claim lacked merit); Nassau Bowling Proprietors Ass'n v. County of Nassau, 965 F.Supp. 376 (E.D.N.Y.1997) (addressing only the threshold issue of whether defendant exceeded its authority pursuant to New York State law in promulgating nonsmoking regulations in case brought under federal question jurisdiction). First, the New York Court of Appeals has squarely addressed the issue to be decided; this is not a claim that presents a "novel or complex issue of state law." Second, the state law claim arises out of the same undisputed facts which form the basis of plaintiffs' federal claims. As the Court is already fully familiar with the record and briefs in this action, judicial economy will be served by our deciding the state law claim. In addition, defendants plan on enforcing the regulations at issue in August 2000. A quick resolution of the action therefore will serve the interests of both parties.
To the extent that defendants argue that this Court lacks subject matter jurisdiction because plaintiffs fail to state a claim for which relief may be granted, this argument is without merit. As the Supreme Court has stated:
Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal *262 of the case would be on the merits, not for want of jurisdiction.
Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).
In Goldman v. Gallant Securities, 878 F.2d 71 (2d Cir.1989), the Second Circuit held that "[i]f the complaint alleges a violation of federal law and the claim is `neither immaterial nor insubstantial, the proper course of action is for the district court to accept jurisdiction and address [an] objection as an attack on the merits.'" Id. at 73 (citation omitted). In the instant case, plaintiffs allege that the regulations promulgated by defendant Board of Health "provide unequal and adverse treatment" to restaurants and bowling alleys as compared to bars and taverns and force plaintiffs to disseminate an ideological message on their public property with which they do not agree. These claims are not insubstantial or immaterial. Accordingly, we will address defendants' motion as an "attack on the merits."
Pursuant to Fed.R.Civ.P. 12(h)(2), a defense of failure to state a claim upon which relief can be granted may be raised after the pleadings are closed by a Rule 12(c) motion. The motion is then treated like a Rule 12(b)(6) motion. See George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 n. 2 (2d Cir.1977). Rule 12(c) provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
Here, plaintiffs filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shortly after defendants filed their motion for judgment on the pleadings. In response to defendants' motion to dismiss, plaintiffs repeatedly reference their memorandum of law and their exhibits in support of their motion for summary judgment. Defendants, in their reply to plaintiffs' Rule 56.1 Statement, adopted plaintiffs' exhibits. (See Defs.' Rule 56.1 Stmt. at 2 n. 1.) There are no material issues of fact in dispute. Accordingly, we will treat the parties' motions as cross-motions for summary judgment and will dispose of them as provided in Rule 56.

II. Standard of Review

Rule 56(c) provides that the court may grant summary judgment where there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56(c). If there are no genuine issues, the movant is entitled to judgment as a matter of law. "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Agritronics Corp. v. National Dairy Herd Ass'n, 914 F.Supp. 814, 820 (N.D.N.Y.1996). On cross-motions for summary judgment, the standard is the same as that for individual motions. In evaluating each motion, the court must look at the facts in the light most favorable to the non-moving party. Aviall, Inc. v. Ryder Sys., Inc., 913 F.Supp. 826, 828 (S.D.N.Y.1996).

III. State Separation of Powers Claim

The Public Health Law authorizes boards of health to "formulate, promulgate, adopt and publish rules, regulations, orders and directions for the security of life and health in the health district which shall not be inconsistent with the provisions of this chapter and the sanitary code." N.Y.Pub. Health Law § 347. However, regulations promulgated by a board pursuant to that delegation of power are subject to review to determine whether they comport with the requirements of the state constitution. See Co-Pilot Enters., Inc. v. Suffolk Co. Dep't of Health, 38 Misc.2d 894, 899-900, 239 N.Y.S.2d 248 (Sup.Ct.1963) (stating that the court is charged with determining whether regulations promulgated by county department of health pursuant to N.Y.Pub. Health § 347 violate state and federal constitutions). At issue in the instant case is *263 whether defendants violated New York's separation of powers doctrine and exceeded their authority when they promulgated Article 26 of the Dutchess County Sanitary Code.
The New York Court of Appeals has set forth the following view of the separation of powers doctrine as it relates to defining the boundaries between the Legislature and administrative agencies:
Because of the constitutional provision that "[t]he legislative power of this State shall be vested in the Senate and the Assembly" (N.Y. Const., Art III, § 1), the Legislature cannot pass on its lawmaking functions to other bodies ..., but there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature.... The delegation of power to make the law, which necessarily involves a discretion as to what it shall be, cannot be done, but there is no valid objection to the conferring of authority or discretion as to a law's execution, to be exercised under and in pursuance of it.
Matter of Levine v. Whalen, 39 N.Y.2d 510, 515, 384 N.Y.S.2d 721, 349 N.E.2d 820 (1976) (internal citations omitted).
Plaintiffs base their argument in large part upon a 1987 New York Court of Appeals decision in which the court held that the Public Health Commission (the "PHC") overstepped its boundaries in enacting restrictions aimed at regulating second-hand smoke. Boreali v. Axelrod, 71 N.Y.2d 1, 8-9, 523 N.Y.S.2d 464, 517 N.E.2d 1350 (1987). Defendants argue that because the Legislature amended the Public Health Law in the wake of the Boreali decision, Boreali is distinguishable from the instant case.

A. The Boreali Decision

Section 225(5)(a) of the Public Health Law authorizes the PHC to establish sanitary regulations to "`deal with any matters affecting the ... public health.'" The issue in Boreali was whether that "broad grant of authority contravened the oft-cited principle that the legislative branch of government cannot cede its fundamental policy-making responsibility to an administrative agency" and, if the grant were permissible, whether "the agency exceeded the permissible scope of its mandate by using it as a basis for inherently legislative activities." Boreali, 71 N.Y.2d at 9, 523 N.Y.S.2d 464, 517 N.E.2d 1350. The court held that although the enabling statute was constitutional, the PHC "stretched that statute beyond its constitutionally valid reach when it used the statute as a basis for drafting a code embodying its own assessment of what public policy ought to be." Id.
At the time of the Boreali decision, Public Health Law § 1399-o, which had been enacted in 1975, prohibited the smoking of tobacco in public means of mass transportation, libraries, museums and theatres. See Fagan v. Axelrod, 146 Misc.2d 286, 290, 550 N.Y.S.2d 552 (Sup.Ct.1990). After Boreali was decided, the State Legislature amended the Public Health Law by Chapter 244 of the Laws of 1989, adding a new Article 13-E entitled "Regulation Of Smoking In Certain Public Areas," a comprehensive plan that regulates smoking in indoor public areas. The regulations provide, inter alia, that:
4. (a) The owner, operator or manager of a bowling establishment may permit smoking in the concourse area, which is the area directly behind and immediately contiguous to the bowler settee area, but shall provide a nonsmoking area constituting at least twenty-five percent of the square footage of the concourse area.
***
5. The owner, operator or manager of a food service establishment:
(a) shall designate a contiguous nonsmoking area sufficient to meet customer demand and may not determine that no such demand exists. If seventy percent of a food service establishment's indoor seating capacity for dining is designated *264 as a nonsmoking area, then customer demand will be deemed to have been met. The designation of less than seventy percent of the indoor seating capacity for dining of a food service establishment as a nonsmoking area shall not create the presumption of noncompliance with the provisions of this subdivision;
(b) shall prominently post notice at each entrance advising that a nonsmoking section is available, and each patron shall be given an opportunity to state his preference; and
(c) may designate a separate enclosed room or rooms solely for use by smokers.
N.Y.Pub. Health Law § 1399-o.
The "board of health of a county or part county health district ..., or in the absence thereof, an officer of a county designated for such purpose by resolution of the elected county legislature or board of supervisors" is charged with enforcing the provisions of article 13-E. Id. § 1399-t(1). The article also provides that "[n]othing herein shall be construed to restrict the power of any county, city, town, or village to adopt and enforce additional local law, ordinances, or regulations which comply with at least the minimum applicable standards set forth in this article." Id. § 1399-r(3).
The Boreali court set forth several factors which, taken together, demonstrated that the PHC "improperly assumed for itself the open-ended discretion to choose ends ... which characterizes the elected Legislature's role in our system of government." 71 N.Y.2d at 11, 523 N.Y.S.2d 464, 517 N.E.2d 1350 (internal citation and quotations omitted). The first factor was that the PHC carved out certain exemptions, such as for bars and convention centers, which had "no foundation in considerations of public health" but rather "demonstrate[d] the agency's own effort to weigh the goal of promoting health against its social cost and to reach a suitable compromise." Id. at 12, 523 N.Y.S.2d 464, 517 N.E.2d 1350. The second factor was that the PHC "did not merely fill in the details of broad legislation describing the over-all policies to be implemented" but "wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance." Id. at 13, 523 N.Y.S.2d 464, 517 N.E.2d 1350. The third factor was that "the agency acted in an area in which the Legislature had repeatedly triedand failedto reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions." Id. The final factor was that "although indoor smoking is unquestionably a health issue, no special expertise or technical competence in the field of health was involved in the development of the antismoking regulations."
Defendants argue that the Legislature's amendment of article 13-E nullifies many of the above concerns and distinguishes Boreali from the instant case. Plaintiffs claim that despite amended article 13-E, defendants exceeded their authority in enacting Article 26 of the Dutchess County Sanitary Code. We will address in turn each of the Boreali factors as they pertain to the instant case.

1. The Board's Consideration of Non-Health Factors

As to the first factor, whether exemptions are carved from the regulations which demonstrate that the agency considered non-health concerns, defendants claim that the exemptions set forth in article 26 of the Dutchess County Sanitary Code simply mirror the exemptions set forth in article 13-E of the Public Health Law. Defendants state that they did not consider non-health factors in promulgating the regulations.
Article 26 bans smoking in restaurants without bars. Dutchess Co. Sanitary Code § 26.4(A)(17). As to restaurants with bars, sports arenas, bingo halls and bowling centers, the code provides that these areas must be smokefree. However, "[s]moking may be allowed within bar areas provided the bar area is not the sole *265 patron waiting area, is separated from all other areas by a floor to ceiling partition and is ventilated such that secondhand tobacco smoke from the bar area does not enter other areas in the facility." Id. § 26.4(B)(1)-(4). Article 26, like article 13-E, exempts from regulation private residences and automobiles, private social functions, tobacco businesses, and bars and taverns. Compare N.Y.Pub. Health Law § 1399-q(1), (2), (5), (8) with Dutchess Co. Sanitary Code § 26.8.
Two federal courts in this circuit, interpreting New York law, have struck down similar regulations as exceeding the powers vested in a county board of health by the Public Health Law based, in part, on the county boards' consideration of non-health factors. In Justiana, 45 F.Supp.2d 236, the Western District of New York struck down regulations promulgated by the Niagara County Board of Health which, like the regulations at issue here, were more restrictive than those adopted by the State Legislature in the Clean Indoor Air Act. The Niagara County Board enacted the regulations after the Niagara County Legislature failed to enact a proposed law which was the product of negotiations between the board of health, special interest groups and the legislature, and instead passed a less restrictive law. See id. at 239. Like the Dutchess County regulations, the Niagara County regulations allowed smoking in bars, but required restaurants with bars to construct a floor-to-ceiling partition between the bar area of the restaurant and the dining area. See id.
Defendants attempt to distinguish the instant case from the Justiana decision on grounds that in Justiana, the record was "replete with evidence that Board members were concerned with the economic effects of further restrictions on local businesses and attempting to balance these concerns with concerns about the effects of Environmental Tobacco Smoke ("ETS")." Id. at 238. However, regardless of the record, the Justiana Court recognized:
These regulations necessarily have a serious economic impactfor example, restaurant owners must undertake construction in order to comply with the partition regulation, or else they must disallow smoking in their restaurants, which they fear will result in a loss of business. If defendants characterize this regulatory decision as based solely on health considerations, the Board could ban smoking altogether, claiming it only considered the harmful effect of ETS, as long as it was careful to not mention any non-health considerations on the record. But in making such a decision Board members would necessarily have to take into account non-health considerations.
Id. at 244.
Based on that same rationale, the Eastern District of New York struck down an ordinance promulgated by the Nassau County Board of Health which exempted bars, taverns and private social gatherings in Nassau Bowling, 965 F.Supp. at 379. The court found that such exemptions were "not based on health concerns." Id. at 380. The court also found unavailing the defendant's argument that the Nassau County Board of Health simply adopted the classifications set forth by the State Legislature in the Clean Indoor Air Act. The court stated:
The very classifications adopted by the Board had been passed by the state legislature after, presumably, the legislature's weighing of factors traditionally considered by an elected body. Unlike the Board, which has authority to deal only with health issues, a legislature may consider issues as diverse as economic interests and privacy concerns, in addition to health issues.
Id.
We agree with the rationale of these cases and fail to see how the instant case is distinguishable. Although the record here is clear of references by defendants to non-health concerns in the minutes of regular Board meetings, the regulations themselves belie a compromise between social, economic, privacy and health concerns. *266 We note that there are no minutes or notes from meetings of the Board's Tobacco Committee in the record, so the Court is unable to determine the factors expressly discussed by that Committee in creating its draft regulations.
The transcripts of the public hearing the Board held prior to adopting the regulations present evidence of the myriad aspects of regulating ETS. Opponents of the regulations, some of them now plaintiffs in the instant case, were largely concerned with potential financial hardship as a result of the regulations rather than refuting the scientific evidence relied upon by the Board. For example, Jim Fahey, a restaurant owner, told the Board:
I hear some people here today saying that restaurant business will increase as a result of nonsmoking. I don't know where they get their facts because of all the people I talk to from Westchester County, from Erie County that have imposed smoking laws, they are losing business to other nearby counties if they are on the perimeter of the county. Also, the expense of implementing the laws, as it's currently written, just in my restaurant would require expenditure of about $50,000, one of the reasons being [section] 26.5 for the protection of minors.
(Pls.' Ex. 17, Public Hearing Trans. of 3/5/99, at 30-31.)
Likewise, Trina Nelson, co-owner of a restaurant, stated:
What I would like to say is that to those of us who own restaurants and bars, this is an economic issue and not a health issue. I think we all recognize that smoking is dangerous and smoking is unhealthy, but I think the basic issue is that we feel that we should be allowed to give our customers a choice and they should have that choice in our restaurants and our bars.
(Pls.' Ex. 17, Public Hearing Trans. of 4/6/99, at 97.)
The Board appears at least to have considered the non-health factors presented to it during the public hearing. At a regular Board meeting following the public hearing, defendant Board member Raymond Koloski "stated that with due respect to the Legislature, the Board of Health should be the legislative body that should consider the pros and cons and all of the aspects of this proposal. That has been done through the Public Hearing and public comment process. The Legislature does not know as much about this issue as the Board of Health." (Pls.' Ex. 18, Minutes of Board Meeting of 5/20/99.) The Board referred the issue of the regulations to the Tobacco Committee following the public hearing "for the specific purpose of reviewing the commentary that ha[d] been submitted recommending back to the Board any appropriate amendments to the proposal that they felt are necessary and appropriate given the testimony that the Board has heard." (Id.) Notably, the Board did not pass a resolution proposed by the committee which would have banned smoking in the bar areas of restaurants to protect the health of workers in those areas. (Pls.' Ex. 19, Minutes of Board Meeting of 6/17/99.)
Furthermore, the exception the Board carved out for "private social functions" which constitute "any weddings, parties, testimonial dinners, or other similar gatherings in which the seating arrangements are under the control of the organizer or sponsor of the event and not the person who owns, manages, operates or otherwise controls use of the place in which the function is held," Dutchess Co. Sanitary Code § 26.2(H), 26.8(D), contradicts the Board's stated purpose of "[r]educing exposure to secondhand tobacco smoke for people of all ages, particularly young people." Id. § 26.1. Certainly "people of all ages" attend weddings and other social gatherings and the nature of the risk is unaffected by who makes the seating arrangement. The exemption likely was based on privacy concerns, but this kind of balancing is within the province of the legislature, not an administrative agency. See Nassau Bowling, 965 F.Supp. at 380.
*267 The Supreme Court of Albany County, upholding the constitutionality of the Clean Indoor Air Act, succinctly stated why regulating ETS is an appropriate task for the legislature:
The use of considerations of spatial dimensions and proximity of smokers to nonsmokers in certain instances, and complete prohibition of smoking in others, represents an accommodation between the desire to limit the exposure of nonsmokers to tobacco smoke and relevant economic and social considerations. The Legislature, with authority to do so, accepted concerns that completely prohibiting smoking at such places as food service establishments, bingo halls and bowling alleys would have a substantial adverse impact on patronage there. Thus reasonable compromises were resolved upon, requiring the designation of nonsmoking areas to protect the health of those patrons not wishing to be exposed to tobacco smoke.
Fagan, 146 Misc.2d at 297-98, 550 N.Y.S.2d 552.

2. The Regulations Are Not Interstitial in Nature

The second Boreali consideration is whether the agency was "merely fill[ing] in the details of broad legislation" or whether the agency "creat[ed] its own comprehensive set of rules without benefit of legislative guidance." 71 N.Y.2d at 13, 523 N.Y.S.2d 464, 517 N.E.2d 1350. Defendants argue that the Board patterned article 26 after article 13-E of the Public Health Law, and point to section 1399-r(3) which, as stated above, provides that "[n]othing herein shall be construed to restrict the power of any county, city, town, or village to adopt and enforce additional local law, ordinances, or regulations which comply with at least the minimum applicable standards set forth in this article."
Although article 26 mirrors many of the exceptions set forth by the State Legislature, the Dutchess County Sanitary Code is substantially more restrictive. For example, where the Clean Indoor Air Act exempts the bar area of a food service establishment from regulation, see N.Y.Pub. Health Law § 1399-n(5), article 26 states that "[s]moking may be allowed within bar areas provided the bar area is not the sole patron waiting area, is separated from the dining area by a floor to ceiling partition and is ventilated such that secondhand tobacco smoke from the bar area does not enter other areas in the facility, including the dining area." Dutchess Co. Sanitary Code § 26.4(B)(1). The Board thus departed from merely following legislative guidance and went forward into a legislating foray all its own. See also Justiana, 45 F.Supp.2d at 245 ("By adopting [smoking] regulations that are substantially more restrictive than existing legislation, the [Niagara County] Board [of Health] went beyond interstitial rule-making and into the realm of legislating.").

3. The County Legislature's Failure to Act

The third Boreali factor, whether the regulations concern "an area in which the Legislature had repeatedly triedand failedto reach agreement in the face of substantial public debate," 71 N.Y.2d at 13, 523 N.Y.S.2d 464, 517 N.E.2d 1350, also weighs against defendants. The record demonstrates that the Dutchess County Legislature tried, and failed, to pass a "Born Free to Breathe Local Law" which would have excluded minors from any public indoor smoking area in the county. (See Pls.' Ex. 3.) According to Suzanne Horn, the Dutchess County Legislature's representative on the Board, the local law was "soundly defeated." (Pls.' Ex. 10, Minutes of Board Meeting of 5/21/98.) See Justiana, 45 F.Supp.2d at 245 (finding third Boreali factor weighed in favor of invalidating county board of health's smoking regulations where the county legislature "debated the very provisions at issue and declined, after considering public debate, to make them law"). Although the record does not set forth details as to the debate, if any, preceding the County Legislature's failure to pass the Born Free to Breathe Local Law, the fact remains that *268 the Board interceded to perform a legislative function the County Legislature could not, or would not, perform.

4. Expertise Was Not Required

This Court certainly recognizes that the Board is comprised of dedicated public servants and experts in the field of public health. However, that ETS poses a significant health risk is widely known and, indeed, was not contested during the public comment period prior to the Board's promulgation of article 26. See id. ("[I]t is well known to those outside the scientific community that [ETS] exposure may lead to the development of serious health problems."); Newark Valley Cent. Sch. Dist. v. Public Employment Relations Bd., 83 N.Y.2d 315, 322, 610 N.Y.S.2d 134, 632 N.E.2d 443 (1994) ("Secondhand smoke unquestionably poses health hazards, a reality acknowledged in article 13-E of the Public Health Law."). The New York Court of Appeals recognized in Boreali that "although indoor smoking is unquestionably a health issue, no special expertise or technical competence in the field of health was involved in the development of the antismoking regulations challenged here." 71 N.Y.2d at 13-14, 523 N.Y.S.2d 464, 517 N.E.2d 1350.
In sum, the Board, by enacting smoking regulations which necessarily required a balancing of economic, social and privacy interests with health interests, has exceeded its authority as an administrative agency in violation of the state principle of separation of powers.
In light of this holding, we need not address plaintiffs' claims that the Board's regulations violate the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

CONCLUSION
For the reasons stated above, plaintiffs' motion for summary judgment is granted and defendants' cross-motion is denied. Defendants are permanently enjoined from enforcing article 26 of the Dutchess County Sanitary Code.
SO ORDERED.