Cooke, J.
The State Commissioner of Health appeals from a judgment of the Appellate Division which annulled his determination revoking respondent’s hospital operating certificate, declared section 2800 of the Public Health Law unconstitutional and remitted the matter for further proceedings.
Respondent, the operator of the Westmere Convalescent Home at Guilderland in Albany County, was charged on May 28, 1974 with numerous violations of article 28 of the Public Health Law and of rules and regulations promulgated thereunder. Following a hearing, the hearing officer sustained certain of the charges, recommended revocation of respondent’s operating certificate and denied most of his requests for modifications and exceptions to the standards of construction set forth in the State Hospital Code. On March 27, 1975, the Commissioner of Health adopted the findings of fact and conclusions of the hearing officer and ordered that the operating certificate be revoked effective June 1, 1975, that respondent make arrangements for connection of a fire alarm system to the Westmere Convalescent Home, that he arrange for immediate inspection of said home by the Westmere Fire Department and for systematic fire drills and that he take all steps necessary to bring about an orderly cessation of operation prior to June 1, 1975.
Thereafter, respondent instituted the instant matter as an article 78 proceeding seeking annulment of the commissioner’s *515 determination. Upon transfer, the majority of the Appellate Division converted the proceeding to an action for declaratory judgment, held section 2800 of the Public Health Law unconstitutional on the ground that it delegated legislative powers to the Department of Health without adequate standards or guidelines, and stated that, even if the commissioner could validly prescribe construction standards pursuant to article 28 of the Public Health Law, the regulations adopted for that purpose were so vague, confusing and meaningless as to be arbitrary and unreasonable.
Because of the constitutional provision that "[t]he legislative power of this State shall be vested in the Senate and the Assembly” (NY Const, art III, § 1), the Legislature cannot pass on its law-making functions to other bodies (Matter of Mooney v Cohen, 272 NY 33, 37), but there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature (Packer Coll. Inst. v University of State of N. Y., 298 NY 184, 190; Matter of Barone [Waterfront Comm. of N. Y. Harbor], 18 Misc 2d 1066, 1069, aifd 8 AD2d 783, affd 7 NY2d 913). The delegation of power to make the law, which necessarily involves a discretion as to what it shall be, cannot be done, but there is no valid objection to the conferring of authority or discretion as to a law’s execution, to be exercised under and in pursuance of it.
The Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its exercise. This does not mean, however, that a precise or specific formula must be furnished in a field where flexibility and the adaptation of the legislative policy to infinitely varying conditions constitute the essence of the program. The standards or guides need only be prescribed in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated, since necessity fixes a point beyond which it is unreasonable and impracticable to compel the Legislature to prescribe detailed rules (Matter of City of Utica v Water Pollution Control Bd, 5 NY2d 164, 168-169). Indeed, in many cases, the Legislature has no alternative but to enact statutes in broad outline, leaving to administrative officials enforcing them the duty of arranging the details (Matter of People [International Work *516 ers Order], 199 Misc 941, 972, affd 280 App Div 517, affd 305 NY 258). More to the point, it is not always necessary that license legislation prescribe a specific rule of action and, where it is difficult or impractical for the Legislature to lay down a definite and comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials (Matter of Bologno v O’Connell, 7 NY2d 155, 159).
Section 2800 of the Public Health Law, entitled "Declaration of Policy and Statement of Purpose”, provides: "Hospital and related services including health-related service of the highest quality, efficiently provided and properly utilized at a reasonable cost, are of vital concern to the public health. In order to provide for the protection and promotion of the health of the inhabitants of the state, pursuant to section three of article seventeen of the constitution, the department of health shall have the central, comprehensive responsibility for the development and administration of the state’s policy with respect to hospital and related services.”
The standard, "to provide for the protection and promotion of the health of the inhabitants of the state”, is not so vague and indefinite as to set no standard or to outline no policy, as held by the majority of the Appellate Division. The policy of the State, the requirements it imposes and the context of the questioned provision demonstrate the contrary. This criterion is related to the policy of the State, that "[h]ospital and related services * * * [be] of the highest quality, efficiently provided and properly utilized at a reasonable cost”. Obviously, the Legislature sought that the Department of Health be administered, with respect to hospital and related services, so as to develop the State policy and, surely, the protection and promotion of the health of the inhabitants of the State are related thereto.
In enacting section 2800, the Legislature established an easily understood principle in a field where a substantial degree of flexibility is required. Conditions vary from place to place in our State, with its variety of geographical regions and its large cosmopolitan population. Medical techniques and convalescent care change constantly, geriatric needs expand steadily, and the availability of facilities for the ill and infirm fluctuates frequently. There was and is good reason to expect that officials of the Department of Health would be vastly more familiar with and more competent to cope with hospitals and related services throughout the State than individual *517 legislators. Practical necessities compelled the Legislature to assign broad functions to the department and to leave to it the duty of bringing about the result pointed out by statute.
"To provide for the protection and promotion of the health of the inhabitants of the state” is sufficiently specific and clear when viewed in the light of other statutory standards which have been upheld (see, e.g., National Broadcasting Co. v United States, 319 US 190, 225-226 [" 'public interest, convenience, or necessity’ ” in establishing rules under the Federal Communications Act]; New York Cent. Securities Corp. v United States, 287 US 12 [" 'public interest’ ” regarding acquisition of one carrier by another]; Matter of Sullivan County Harness Racing Assn, v Glasser, 30 NY2d 269, 277 [" 'public interest, convenience or necessity’ ” and " 'best interest of racing generally’ ” in issuance of licenses by State Harness Racing Commission]; Martin v State Liq. Auth., 15 NY2d 707 [" 'public convenience and advantage’ ” in issuance of liquor licenses by State Liquor Authority]; Chiropractic Assn. of N. Y. v Hilleboe, 12 NY2d 109, 119-120 [" 'matters affecting the security of life or health or the preservation and improvement of public health’ ” in respect to powers conferred upon Public Health Council]; People ex rel. Doscher v Sisson, 222 NY 387, 391 [" 'public peace, safety and good order’ ” regarding wartime sale of alcoholic beverages]; Matter of Aloe v Dassler, 278 App Div 975, affd 303 NY 878 [" 'public health, safety and general welfare’ ” in issuance of permits by zoning board of appeals]; Matter of International Ry. Co. v Public Serv. Comm. of State of N. Y., 264 App Div 506, affd 289 NY 830 [contract not in the " 'public interest’ ”]; Matter of Rudack v Valentine, 163 Misc 326, 328, affd 274 NY 615 [" 'public convenience, welfare and necessity’ ” for additional taxicabs]).
The Appellate Division majority also concluded that the Legislature failed to establish proper guidelines for the Department of Health regarding structural requirements for nursing homes. Subdivision 1 of section 2806 of the Public Health Law provides that a hospital operating certificates may be revoked by the Commissioner of Health on proof that "the hospital has failed to comply with the provisions of this article [art 28] or rules and regulations promulgated thereunder”. Paragraph (b) of subdivision 2 of section 2805 of said law declares that "[a]n operating certificate shall not be issued by the department unless it finds that the premises, equipment * * * are fit and adequate”. Suffice it to mention that, under a *518 general standard of "fitness”, it has been held that an administrative agency may determine an applicant’s fitness for a particular occupation (see Matter of Employers Claim Control Serv. Corp. v Workmen’s Compensation Bd. of State of N. Y., 35 NY2d 492, 497; Matter of Mandel v Board of Regents, 250 NY 173, 175, 177).
An attack is made by respondent on the regulations promulgated under article 28 of the Public Health Law, designated as chapter V of title 10 of the New York Code of Rules and Regulations and referred to as the State Hospital Code. An administrative regulation, legislative in character, will be upheld as valid if it has a rational basis, that is, if it is not unreasonable, arbitrary or capricious (Grossman v Baumgartner, 17 NY2d 345, 349). At the time of the determination,* Part 711 (10 NYCRR), entitled "GENERAL STANDARDS OF CONSTRUCTION”, applied to all medical facilities, including nursing homes (see 10 NYCRR 700.2 [9]). Section 711.1 thereof provided three possible methods for compliance with the State Hospital Code by nursing homes, the first or standard method being compliance by such a facility with Part 713 which set forth specific standards of construction for nursing homes (10 NYCRR 711.1 [a]). If the facility did not meet standards of construction required by Part 713, the commissioner could modify the applicability of said standards within the limits of section 711.5 (10 NYCRR 711.1 [b]) pertaining to nursing homes. Where there were practical difficulties or unnecessary hardships by such an existing facility in conforming with pertinent provisions of section 711.5 and Parts 714, 715, 716 and 717, as applicable, as a third possibility, the commissioner could grant "an exception to the applicability of such sections to the applicant conditioned upon such reasonable requirements as the commissioner may specify if he finds that such determination is in the community interest and does not adversely affect the health or safety of the inhabitants” (10 NYCRR 711.1 [c]).
Section 711.5, entitled "Structure, equipment and safety of existing nursing homes” and applicable only to existing nursing homes, provided that "[e]xisting nursing homes shall meet the standards of construction of this Subchapter unless a *519 modification of, or an exception to, such standards is granted pursuant to section 711.1 of this Part.” Section 711.5 contained a substantial number of standards, the vast majority of which were modified by words, indicating that they were as "determined”, "acceptable”, "approved” or "permitted” by the department. Being subjective and in the absence of objectivity, these standards were unreasonable and arbitrary and therefore invalid.
Likewise, the provisions of section 711.1 (subd [c], par [1]) (10 NYCRR 711.1 [c] [1]), extending to the commissioner the right to grant an exception to the applicability of the sections stated, conditioned "upon such reasonable requirements as the commissioner may specify if he finds that such determination is in the community interest and does not adversely affect the health or safety of the inhabitants” are vague and subjective.
The first possible method for compliance as set forth in section 711.1, conformance with Part 713 (which detailed standards of construction for nursing homes), was unobjectionable. The second and third methods were integral parts of the regulatory scheme envisioned by section 711.1 and to which plaintiff, the former petitioner, had the right to resort. The invalid methods were so interwoven with the valid one that none of these methods as set forth in the rule can stand.
The judgment of the Appellate Division should be modified by deleting therefrom the provision that section 2800 of the Public Health Law is declared unconstitutional and by substituting therefor a declaration that said section is constitutional, and, except as so modified, said judgment should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Judgment modified, with costs to petitioner-respondent, in accordance with the opinion herein and, as so modified, affirmed.

 A substantial revision of the applicable provisions of chapter V of title 10 of NYCRR, the State Hospital Code, was made effective October 1, 1975, a date subsequent to the determination under review. Of course, no view is expressed as to the validity of the regulations as so revised.