Cooke, J.
(dissenting). I respectfully dissent. The order of the Appellate Division, directing entry of a judgment declaring the rule of the Commissioner of Health (10 NYCRR 40.11 [1]) invalid, should be reversed.
We are concerned with the right of a county to reimbursement for expenditures made by it for "fringe benefits”, i.e., contributions for employee health insurance and retirement funds including Social Security. The controversy — Erie County’s right to restitution from the State for such payments made in connection with general public health work — comes to us without factual dispute.
On September 24, 1975, Erie County authorities were advised by letter that the Commissioner of Health of the State of New York had approved for State aid reimbursement $8,371,876, of which $6,803,346 was allocated for salaries, wages and fees and $1,568,530 for other maintenance and operation. The missive stated that "Employee Fringe Benefits (Retirement, Social Security Medical Insurance)” were non-reimbursable. During the month following, Erie submitted vouchers to the Department of Health in which reimbursement was sought for employee fringe benefits paid in connection with general public health work and ghetto medicine programs. Thereafter, in November and December, 1975, Erie County received reimbursement checks for expenditures made in these programs, but each instrument excluded amounts claimed for fringe benefits. The nonpayment of these items was consistent with 10 NYCRR 40.11, entitled "Projects or services excluded”, which provides so far as pertinent:
*820 "Projects or services excluded from State aid reimbursement are:
* * *
"(X) Employee beneñts. Contributions by counties and cities for employee health insurance and retirement funds including social security.”
In turn, this proceeding was commenced to secure a declaration that subdivision (1) be declared invalid and that respondents reimburse Erie County for fringe benefits expenses, pursuant to the Public Health Law. Special Term dismissed the petition and the Appellate Division, voting 3 to 2, reversed on the law and ordered that judgment be directed to be entered declaring the subdivision invalid and that Erie County be reimbursed for the subject fringe benefits.
Article 6 of the Public Health Law, as its title indicates, deals with the subject of State aid. Within it, section 601 — a segment of title I entitled "General Provisions”, provides: "The appropriations made or to be made for purposes of carrying out the provisions of this article shall be available * * * for the payment of expenses of personal service”. The gist of the county’s postion is that this statutory language mandates that all personal service expenses must be reimbursed and hence the instant regulation which purports to exclude reimbursement for such fringe benefits is invalid. Also contained within article 6 is title II (State Aid for General Public Health Work: Counties and Cities), and section 605 thereof, entitled "State aid to counties; general public health activities”, recites: "Whenever the board of supervisors of any county shall appropriate or otherwise make funds available and expend moneys for the construction, establishment or maintenance by such county of a county, community, or other public hospital, clinic, dispensary or similar institution, or for the purpose of defraying the expenses of such county in any public enterprise or activity for the improvement of the public health, or any public health work undertaken by such county, including any services and facilities provided for children regardless of the school which they legally attend, within limits to be prescribed by the commissioner, such county shall receive state aid in the manner and subject to the conditions prescribed in this article unless state aid is otherwise specifically provided for any such purpose by this chapter or any other law” (emphasis supplied).
A reasonable reading of these statutes, considered as posi *821 tioned in the legislative pattern, demonstrates that section 601 lays down a general guide as to the types of services which might be reimbursable by the State and that section 605 empowers the Commissioner of Health to promulgate regulations as to the scope of reimbursement. Viewed in this light, 10 NYCRR 40.11 (1) which excludes contributions by counties for employee health insurance and retirement funds, is consistent with its statutory foundation. This conclusion is confirmed by section 609 which mandates: "It shall be the duty of the commissioner to formulate standards of construction, equipment, service, administration and work which must be complied with by municipalities in order to be entitled to state aid, and no state aid shall be given to any municipality unless the commissioner, after inspection and examination by him or his representative, shall make his certifícate that such construction, equipment, service, administration or work is necessary to the public health and conforms to the standards so established therefor, and to the limits prescribed by him as required by sections six hundred five and six hundred six of this chapter” (emphasis supplied). Simply, the Legislature would have made no sense in mentioning "state aid * * * to the limits prescribed by [the commissioner] as required by [section] six hundred five” if reimbursement "of expenses of personal service” is to be without limitation.
The majority at the Appellate Division point to a deletion from a predecessor of section 605 (former Public Health Law, § 19, subd 2) and urge that "the only reference to limits remaining in section 605 refers to the commissioner’s control over the type of health services to be estabished by counties and not to any authority of the commissioner to determine the particular costs of established services for which the counties are entitled to reimbursement.” This view ignores the salient fact that not only does present section 605 provide for the payment of State aid to counties "within limits to be prescribed by the commissioner”, but the predecessor even after the deletion mentioned also provided for such payment "within limits to be prescribed by the state commissioner of health” (L 1942, ch 1000, § 2).* Adherence to the rationale propounded would be likely to reach absurd results for, according to the majority, once a project or type of health *822 service is approved the commissioner is bound to reimburse a county — regardless of the extravagance or wastefulness of particular costs of established services. If this reasoning is followed to its logical conclusion, it would be possible for a county to pay exorbitant salaries to some favored few or even to all of its health connected officers and employees, agree to extended sick leave or vacation time credits and commit itself to overly generous contributions in a retirement plan — all subject to State reimbursement. Advisedly, to avoid severe budgetary problems and to protect the State treasury from unchecked depletion, the Legislature saw fit to empower the commissioner to promulgate regulations establishing limits within which State aid will be dispensed to the counties and cities across the State.
Both sides attempt to draw support from Matter of County of Erie v Hoch (47 Misc 2d 452, affd 26 AD2d 4, mod 19 NY2d 854). There, a county, the same as involved here, challenged a refusal by the Commissioner of Mental Hygiene to reimburse it for the same fringe benefits in suit here, under section 191-a of the Mental Hygiene Law. That statute originally provided that expenditures subject to reimbursement shall include "salaries of qualified and necessary personnel” (L 1961, ch 281, § 4). While the proceeding was pending, the statute was amended to require reimbursement for "all expenditures * * * incurred by a * * * county for qualified and necessary personnel” (L 1965, ch 647, eff June 28, 1965). No solace to the county can be garnered from this court’s memorandum there, in which it was held: "Under the pertinent provisions of the Mental Hygiene Law as they read prior to June 28, 1965, cities and counties which provided mental health services were entitled to 50% reimbursement from the State for sums expended for ’salaries of qualiñed and necessary personnel’ and all ’operation, maintenance and service costs’. It cannot be said that respondent Commissioner of Mental Hygiene abused his discretion by refusing, under this statute, to reimburse petitioner County of Erie for its employer contributions for hospitalization insurance, retirement under the State Employees’ Retirement System and social security coverage. Under the 1965 amendments, however, participating municipalities are not entitled to 50% reimbursement for 'all expenditures * * * incurred by a * * * county for qualiñed and necessary personnel’. This language is broad and unambigu *823 ous; therefore, petitioner-appellant is entitled to reimbursement from the State for all sums expended for such employer contributions since the effective date of the new law, June 28, 1965” (emphasis supplied). Here, section 601 of the Public Health Law does not require that all expenses of personal service be reimbursed. Instead, in this regard, it simply states that certain appropriations shall be available to the commissioner for the payment of expenses of personal service.
Had the Legislature intended that these fringe benefits be reimbursed without exception or restriction, it would have so stipulated. Thus, for example, even in article 6 of the Public Health Law, there is a specific direction for reimbursement in respect to costs incurred "for pensions, federal old age and survivors insurance and health insurance” in connection with certain air pollution programs (Public Health Law, § 608, subd 1, par e). This proviso was the product of a 1965 amendment (L 1965, ch 427), and it is reasonable to deduce that, had the Legislature desired that the fringe benefits in dispute here be the subject of State aid, explicit authority for them likewise would have been set forth. See, also, section 17-1905 of the Environmental Conservation Law (derived from former Public Health Law, § 1263-c; L 1972, ch 664, § 2).
An administrative regulation, legislative in character and possessed of the attributes of 10 NYCRR 40.11 (1), will be upheld as valid if it has a rational basis — if it is not unreasonable, arbitrary or capricious (Matter of Levine v Whalen, 39 NY2d 510, 518). Measured against such a yardstick, validity is apparent since, in sum, authority to impose limitations is conferred by section 605, there is no express or implied statutory direction that these fringe benefits be embraced within State aid, and it is reasonable beyond doubt that the State should be protected from the blank check that would otherwise hover in the wings, threatening the integrity of the public fisc at the whim of unwise or irresponsible local officials.
Order affirmed, etc.

 This limiting language goes all the way back to 1924 (L 1924, ch 278, § 1), the year after provisions concerning State aid to counties for public health work were added to the Public Health Law (L 1923, ch 662).