Bellacosa, J.
(dissenting). I would reverse and uphold the Public Health Council (PHC) regulation, adopted to preserve and improve the public health, prohibiting smoking indoors in some public places and in designated portions of workplaces (10 NYCRR 25.2). This comprehensive plan, based on a thoroughly documented record and a carefully deliberated public procedure, was promulgated to protect innocent bystanders from involuntary exposure to the environmental smoke of others.
The majority accepts the Legislature’s delegation of broad authority to the PHC to make regulations concerning a wide range of issues affecting the public health (see, Matter of Levine v Whalen, 39 NY2d 510, 515). They recognize that the legislative delegation may be granted in the most generous terms (Chiropractic Assn. v Hilleboe, 12 NY2d 109, 120), that the regulation is in harmony with the statute (State Div. of Human Rights [Valdemarsen] v Genesee Hosp., 50 NY2d 113, 118; Matter of Jones v Berman, 37 NY2d 42, 53), and that this court has held the particular delegation under Public Health Law § 225 (4), (5) (a) to be valid (Chiropractic Assn. v Hilleboe, supra). They even acknowledge that the Legislature did not preempt the field of public smoking or evince an intent to constrict the PHC mandate by enacting its own 1975 narrow smoking ban in Public Health Law article 13-E.
Yet, the majority, wrongly I respectfully submit, concludes that the separation of powers doctrine has been transgressed by the Legislature and by the PHC and, on that basis alone, they uphold the judicial invalidation of the smoking ban regulation.
The statutory authority for protecting the public health was delegated by the Legislature to the PHC 75 years ago in the broadest possible mandate and it has not been withdrawn or narrowed. Indeed, it has been exercised regularly with this *17 court’s express approbation (Matter of Levine v Whalen, 39 NY2d 510, 517, supra; Chiropractic Assn. v Hilleboe, 12 NY2d 109, 120, supra). That power includes adoption and amendment to the Sanitary Code dealing with the root source of authority here — "matters affecting the security of life or health or the preservation and improvement of public health” (Public Health Law § 225 [4], [5] [a]). This court, in a definitive ruling, has held that mission, that delegation and its broad implementation, to be constitutionally proper (Chiropractic Assn. v Hilleboe, supra, at 120 [under State Constitution the Legislature properly delegated power to the PHC in Public Health Law § 225]).
This antismoking regulation is a fortiori valid compared to the regulation in Chiropractic Assn. v Hilleboe (supra), which was a restriction on the freedom and access to chiropractic X-ray treatments, protecting patients from their own choices. Inasmuch as the Public Health Council could do that with our approbation, we search in vain for reasons in the majority’s decision that the same statutory source of authority cannot protect the public health of innocent, involuntary third-party victims from others with this limited regulation.
"[I]t is not necessary that the Legislature supply administrative officials with rigid formulas in fields where flexibility in the adaptation of the legislative policy to infinitely variable conditions constitute the very essence of the programs. Rather, the standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied” (Matter of Nicholas v Kahn, 47 NY2d 24, 31).
The Legislature declared its intent that there be a PHC in this State and empowered it to adopt a Sanitary Code for the preservation and improvement of the public health. The Legislature also wisely refrained from enacting a rigid formula for the exercise of the PHC’s critical agenda of concerns because that calls for expert attention. That legislative forbearance represents both a sound administrative law principle and, at the threshold, a constitutional one as well (Matter of Levine v Whalen, 39 NY2d 510, 515, supra; Chiropractic Assn. v Hilleboe, 12 NY2d 109, 120, supra). The Legislature could not have foreseen in 1913 the specific need for PHC regulations in areas of human blood collection, care and storage; X-ray film usage; pesticide labels; drinking water contamination; or a myriad of other public health topics (see, New York State Sanitary Code, 10 NYCRR parts 1-25). It was prescient and *18 sound governance as well to grant flexibility to the objective expert entity so it could in these exceptional instances prescribe demonstrably needed administrative regulation for the public health, free from the sometimes paralyzing polemics associated with the legislative process. Just as many of the other specified categories in the State Sanitary Code have properly been regulated by the PHC, so, too, does the subject of public indoor smoking and its impact on the health and well-being of innocent third-party victims comfortably fall within that identical, broad legislative embrace.
While the court admits the difficulty under the high separation of powers standard of articulating the basis for drawing, and even finding, some line limiting the PHC’s conceded exercise of authority, it nevertheless goes ahead and does so. Its line is no line, but rather an arbitrary judgment call of its own. It is this judicial branch intrusion which constitutes the truly egregious separation of powers breach into the exercise of prerogatives of the Legislature (Public Health Law § 225 [4], [5] [a] [enabling legislation]) and of the executive (10 NYCRR 25.2 [implementing regulation]).
It is painfully ironic that the PHC, as the legislatively designated body of experts for a vast litany of public health concerns (see, Chiropractic Assn. v Hilleboe, 12 NY2d 109, 119-120, supra), is declared for the first time and against a long line of precedents to lack expertise in this instance. The majority assertion in this regard collapses under the weight of the medically proven fact that environmental tobacco smoke, especially indoors, is hazardous and even deadly to the health of thousands of innocent bystander nonsmokers (see, Health Consequences of Involuntary Smoking, A Report of the Surgeon General [Dec. 1986]; Friedman, Prevalence and Correlates of Passive Smoking, 73 Am J of Pub Health, No. 4 [1983]; Repace, Problems of Passive Smoking, Bull of NY Acad of Med, at 936-946 [Dec. 1981]). The context and the record upon which the PHC exercised, carefully and narrowly, its conceded authority and its medical and scientific expertise on an overwhelming record are directly relevant and compel reversal. The legal denigration of the PHC and its work is a grave mistake.
Along the way to its decision, the majority somewhat hesitantly deals with a legislative history aspect of the case. It concludes that the law passed by the Legislature and on the books for 75 years (Public Health Law § 225 [4], [5] [a]) is *19 nullified or neutralized by the inability of the Legislature to broaden its existing narrow ban (Public Health Law § 1399-o). The functional consequence of the negatively implied repeal of the broader authorization, Public Health Law § 225 (4), (5) (a), imputed by the majority to these recent failed legislative efforts, will be welcomed by opponents of all kinds of existing laws from now on, because the majority’s rule dramatically changes the use of legislative history and of the principles of ordinary statutory construction. This will come back to haunt us as much as the apologetic side step of directly controlling recent authority (41 Kew Gardens Rd. Assocs. v Tyburski, 70 NY2d 325, 335).
No decision of this court and no relevant administrative law principle have been found where general rule-making power was nullified by a court because exceptions to the rule were also promulgated by the regulating entity in response to ancillary social, economic or even policy factors. The majority argument in this respect seems to assert that the PHC was too reasonable and too forthright, and that what it perhaps should have done was create an absolute ban on indoor smoking expressly and pristinely premised on public health concerns. Life and government are not so neatly categorized. Surely, if the greater power exists, the lesser, as responsibly exercised here, should not be forbidden! In any event, the regulatory provisions at issue contain a severability provision (10 NYCRR 25.7) which would permit the invalidation of objectionable exceptions without overturning the validity of the adopted limited ban on indoor smoking.
Finally, there should be great concern about another and broader precedential regression lurking behind the diaphanous analysis of the majority’s holding. Modern administrative and regulatory law principles are profoundly implicated by the majority’s expression of and reliance on the anachronistic nondelegation theory embodied in a concurring opinion of Chief Justice Rehnquist (Industrial Union Dept. v American Petroleum Inst., 448 US 607, 671 [Rehnquist, J., concurring]). The majority’s invocation of the nondelegation doctrine sounds a discordant note which can summon no good in future administrative law disputes. This doctrine was last used to invalidate an act of Congress in 1935 in the infamous Schechter Corp. case (295 US 495; see also, Industrial Union Dept. v American Petroleum Inst., supra, at 717, n 30 [Marshall, J., dissenting]), and arises from a line of Supreme Court decisions responsible for a historical upheaval in the Supreme *20 Court and in the main subsequently overruled anyway (Industrial Union Dept. v American Petroleum Inst., supra, at 674 [Rehnquist, J., concurring]).
The cloud deposited by the instant case on modern administrative and regulatory law is bad enough in the legal sense. But nothing could be more tragic than the harm and hazard inflicted involuntarily on many thousands of innocent third persons, nonsmokers, whose public health was entrusted to the expert protection of the PHC. Its effort is crushed without analytical or precedential justification. That is the human dimension of this case which the court cannot avoid, however awkwardly it tries, by its dry doctrinal discussion. The case represents, simply, a substitution of judicial preference for the expert authorized action of an agency which is a "creature[] of the Legislature * * * possessed only of those powers expressly or impliedly delegated by that body” (Matter of Nicholas v Kahn, 47 NY2d 24, 31, supra; Matter of City of Utica v Water Pollution Control Bd., 5 NY2d 164, 168-169).
Neither the Legislature nor the PHC has transgressed the gossamer lines marked by the separation of powers doctrine, either in delegation or in implementation. That doctrine demands respect from all three branches of government, including this one.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Hancock, Jr., concur with Judge Titone; Judge Bellacosa dissents and votes to reverse in a separate Opinion.
Order affirmed, without costs.