Richard Gabriele, Esq. Informal Opinion Melzer, Lippe, Goldstein Schlissel, P.C. No. 2000-22 Attorneys for the Village of Great Neck Plaza 190 Willis Avenue Mineola, New York 11501
Dear Mr. Gabriele:
You have inquired whether the members of the Village Board of the Village of Great Neck Plaza (the "Village") have conflicts of interest that require them to refrain from deciding two permit applications, and if so whether they may delay acting on the permits or delegate authority to an entity other than the Board to rule upon the permits.
You advised us that in 1998 a corporation applied to the Village Board under the Village's land use regulations for a conditional permit authorizing the operation of a restaurant in a shopping center. The applicant received the conditional permit, but nonetheless commenced an action in federal court under 42 U.S.C. § 1983 seeking compensatory and punitive damages as a result of certain conditions contained in the permit. The owner (applicant) sued the Village and the five village trustees, four of whom remain on the Board, in their individual and official capacities. When the restaurant opened in violation of the terms of the conditional permit, the Village brought a separate action seeking permanent and injunctive relief.
After the commencement of the federal action, the owner transferred other property adjoining the shopping plaza to another corporation, with which it shares corporate principals (the "related entity"). This property is used as a parking lot for the shopping center. The related entity has submitted proposed development plans for the adjoining property to the Village Board. Under local land use regulations, the related entity must apply to the Board for a permit to allow elimination of parking spaces from a lot. It also is required to obtain a permit of compliance from the Board certifying that the proposed development satisfies all applicable requirements of the village code. Granting of this permit of compliance is a condition of issuance of a building permit. Your question is whether the pending litigation prevents the Board members from deciding the permit applications by the related entity.
We note that under section 806 of the General Municipal Law, each municipality is required to adopt a code of ethics setting forth for the guidance of its officers and employees the standards of conduct reasonably expected of them. The code must provide standards regarding disclosure of interests in legislation, holding of investments in conflict with official duties, private employment in conflict with official duties, future employment and other standards relating to conduct of its officers and employees. Codes of ethics may regulate and prohibit conduct and may prohibit disclosure of information. You have informed us that your code of ethics does not provide standards applicable to the question you have raised.
We conclude, in applying standards governing conflicts of interest, that the pending litigation against a municipal board and its members does not as a matter of law require that the board members recuse themselves in a separate application by the party that commenced the lawsuit. A case-by-case analysis is required to determine whether board members can act impartially in such circumstances. The determination must also consider whether their participation in the second application would cause an appearance of impropriety. Government officials must maintain public confidence in the integrity of government. See Op Atty Gen (Inf) No. 97-19. They must avoid even the appearance of impropriety. Id.
In municipalities experiencing extensive development, it is possible for developers to have actions pending that challenge a board's land use decisions while continuing to make separate applications to that board for other developments. A board's performance of its official duties in applying municipal regulations is not per se a source of a conflict of interest in its consideration of subsequent applications by the same party or a related party.[1] See Hortonville Joint School District No. 1v. Hortonville Education Assn., 426 U.S. 482, 491-494 (1976) (a decision maker is not disqualified from deciding a matter simply because he has taken a position, even in public, on a related policy issue "in the absence of a showing that he is not `capable of judging a particular controversy fairly on the basis of its own circumstances'"). Absent specific allegations to the contrary, each application is presumed to be made and considered on its own merits.
We recognize, however, that in particular situations recusal may be appropriate. The relevant factors can be enumerated, but it is impossible to say in advance which will be decisive or how much weight each should be assigned. Among factors that may be considered here, in applying conflict of interest standards, are exposure of board members to personal liability; whether there is an appearance of impropriety that would erode public confidence in the integrity of government; and the judgments of board members as to whether they can act impartially.
Under facts such as those presented here, where the board members have been sued in their personal capacities for compensatory and punitive damages, exposure to personal liability is a particular concern in determining whether recusal is appropriate. There is a greater potential for conflict where the personal financial interests of a board member are antithetical to those of an applicant appearing before the board member. Therefore, a consideration is whether the municipality has authorized defense of board members and indemnification, including defense and indemnification in civil actions for punitive damages, related to acts or omissions occurring within the scope of a member's duties. See Op. Atty. Gen (Inf) No. 93-22 (a local law may authorize defense and indemnification in an action for punitive damages). The decision to defend generally is based on allegations in the complaint or factual determinations at the time the action is commenced. See Op. Atty. Gen. (Inf) No. 92-12. A decision to provide a defense may have been made by the municipality, thus providing some comfort to board members that the facts determined at trial will permit indemnification based on a finding that they acted within the scope of their duties.
Also relevant is the advice of the municipal attorney as to whether the litigation has merit. It may be apparent that an applicant's action against board members in their personal capacities is frivolous or of little merit. Such a lawsuit should not necessitate that board members recuse themselves from hearing a subsequent application by the applicant who brought the pending lawsuit. Under these circumstances, recusal would not serve the public interest.
We recommend that the Village Board consider these and other relevant factors in determining whether recusal is appropriate. Determination of a development application under existing zoning laws is not a non-delegable legislative act. See Levine v. Whalen, 39 N.Y.2d 510, 515 (1976) ("there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature"). Therefore, the Village Board may in its discretion delegate consideration of the later applications to an existing board or may form an ad hoc board to consider such applications.
We conclude, in applying standards governing conflicts of interest, that pending litigation against a municipal board or board members does not as a matter of law require that board members recuse themselves in separate applications by the party that commenced the lawsuit. In particular cases, however, recusal may be appropriate. Local facts and circumstances must be reviewed to determine whether board members can act impartially in considering the later applications, or whether they should consider delegating the applications to an existing board or an ad hoc board.
The Attorney General renders formal opinions only to officers and departments of the state government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Solicitor General
In Charge of Opinions
[1] In an analogous and common situation, judges do not recuse themselves in pending matters when one of the parties commences an article 78 proceeding against a judge arising out of an interlocutory ruling he or she has made.