DUTCHESS/PUTNAM RESTAURANT & TAVERN ASSOCIATION, INC., Cutillo's Restaurant, Ltd., d/b/a Cutllo's Restaurant, Highlander's Hub Corporation, d/b/a Highlander's Hub, Plaintiffs,

v.

The PUTNAM COUNTY DEPARTMENT OF HEALTH, Bruce R. Foley, Public Health Director, The Putnam County Board of Health, Sam Oliverio, Regina Morini, Donna Bernard, Daniel Doyle, Louis Aurisicchio, Herbert Bessen, Carol L. Weber and Michael Nesheiwat, In their Official Capacities as Members of the Putnam County Board of Health, Defendants.

No. 01 CIV. 3837.

United States District Court,
S.D. New York.

Dec. 19, 2001.

Kevin T. Mulhearn, Rogers & Mulhearn, P.C., Orangeburg, New York, for plaintiffs.

James A. Randazzo, Servino, Santangelo & Randazzo, LLP, White Plains, New York, for defendants.

OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

The Dutchess and Putnam Restaurant & Tavern Association and two owners of restaurants located in Putnam County, New York (collectively "plaintiffs") bring this action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202, and for attorney's fees pursuant to 42 U.S.C. § 1988 against the Putnam County Department of Health; its Public Health Director, Bruce R. Foley; the Putnam County Board of Health (the "Board"); and, in their official capacities, board members Sam Oliverio, Regina Morini, Donna Bernard, Daniel Doyle, Louis Aurisicchio, Herbert Bessen, Carol L. Weber and Michael Nesheiwat (collectively "defendants"). Plaintiffs allege that defendants' promulgation of Article 7 of the Putnam County Sanitary Code, which purports to regulate smoking in public places, has denied them equal protection and their right to free speech and violated 42 U.S.C. § 1983, the New York State Constitution and Article 78 of the New York State Civil Practice Law and Rules.

Plaintiffs move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants made a cross-motion for summary judgment. After careful consideration of the parties' arguments, the Court grants plaintiffs' motion for summary judgment and denies defendants' cross-motion for summary judgment.

## FACTUAL BACKGROUND

The following facts, which are not in dispute, are gleaned from the parties' Rule 56.1 Statements and the exhibits attached to the parties' motions and affidavits.

In 1975, the New York State Legislature adopted a law restricting smoking in certain designated areas, such as libraries, museums, theaters and public transportation areas. Public Health Law, Art. 13–E, § 1399-o–1399-q. [Pl. Facts, ¶ 3.] In 1989, the New York State Legislature enacted the Clear Indoor Air Act which amended Article 13–E. This law significantly increased restrictions on smoking in public places. [Pl. Facts, ¶ 4.]

In late 1998, the Board began to explore ways to further restrict smoking in Putnam County. [Pl. Facts, ¶ 5.] The Board solicited the Putnam County Legislature to enact legislation that would further restrict smoking in the County. In April 1999, the Legislature officially refused to take any action on this matter, and informed the Board that the Legislature took a unanimous position of non-involvement and non-participation on the issue of smoking in public places. *Id.*

The Board decided to spearhead this cause, and sought to enact smoking regulations pursuant to the Putnam County Sanitary Code. [Pl. Facts, ¶ 6.] Monthly meetings of the Board were held, and the smoking restriction issue was discussed. On June 21, 1999, the Board presented a draft for proposed changes to Article 7 of the Putnam County Sanitary Code. [Def. Facts, ¶ 10.] The Board discussed the smoking regulations in meetings held in August, September and October 1999. [Def. Facts, ¶ 11.] The Board alleges that only the health issues associated with the smoking regulations were discussed at these times. *Id.*

At the November meeting, the Board presented a final draft of the proposed smoking regulations. [Def. Facts, ¶ 12.] In December 1999, the final draft of the regulations was submitted to the State of New York Department of Health for review by the Bureau of Community Sanitation and Food Protection, the Bureau of House Counsel and the Tobacco Control Program. The Bureau of House Counsel concluded that the proposed regulations were consistent with the State Sanitary Code. [Def. Facts, ¶ 13.] The Board incorporated some of the comments provided by the State agencies into the smoking regulations. *Id.* At the February 2000 meeting, the Board made some changes to the final draft of the proposed regulations. [Def. Facts, ¶ 14.] The Board confirmed that, during the public hearings, it would only "respond to comments about health— no other issues." *Id.* Public hearings on the proposed smoking regulations were held on April 3 & 5, 2000. On May 15, 2000, the Board adopted the amendment to Article 7 of the Putnam County Sanitary Code, entitled "Smoking Laws" (the "regulations"). [Def. Facts, ¶ 18.]

## DISCUSSION

### I. *Subject Matter Jurisdiction*

As a preliminary matter, defendants argue that this action should be dismissed for lack of subject matter jurisdiction. Defendants argue that plaintiffs' federal claims completely lack merit and should be dismissed. Once dismissed, defendants argue that this Court should find that it has no supplemental jurisdiction over the state law claims.

■ In this action, plaintiffs' third and fourth claims for relief are based upon alleged violations of the Equal Protection Clause of the Fourteenth Amendment, and seek attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiffs' fifth and sixth claims for relief are based upon alleged violations of the Free Speech Clause of the First Amendment, and seek attorney's fees pursuant to § 1988. Accordingly, this Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

Defendants claim that plaintiffs' federal claims "completely lack merit and should be dismissed." ·[Def.Opp. and Cross–Motion, p. 10.] Defendants argue that in light of the absence of valid federal claims, this Court, in its discretion, should decline to exercise supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(2) or (3).

Supplemental jurisdiction over plaintiffs' related claims arising under New York law is proper pursuant to 28 U.S.C. § 1367, as long as the state claims are so related to the federal claims that they are part of the same case or controversy. *Id.* There are four situations under which supplemental jurisdiction may be declined:

1. The claim raises a novel or complex issue of State law;

2. The claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3. The district court has dismissed all claims over which it has original jurisdiction; or

4. In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

■ If one of these situations occurs, the Court has the discretion to decline to exercise supplemental jurisdiction. The Court also has the discretion to exercise its supplemental jurisdiction over plaintiffs' state law claims for reasons related to judicial economy, convenience, fairness,

and comity. *Justiana*, 45 F.Supp.2d at 241.

In an almost identical case, Judge William Conner of this District held "for reasons related to judicial economy, convenience, fairness and comity, this Court has determined that it is appropriate to exercise its supplemental jurisdiction over plaintiffs' state law claim." *Leonard v. Dutchess County Dep't. of Health*, 105 F.Supp.2d 258, 261 (S.D.N.Y.2000); *see also Justiana v. Niagara County Dep't of Health*, 45 F.Supp.2d 236 (W.D.N.Y.1999) (in similar action, Court found that plaintiffs' equal protection claim lacked merit, but exercised supplemental jurisdiction over plaintiffs' non-delegation state law claim base on principles of judicial economy, convenience, fairness and comity); *Nassau Bowling Proprietors Ass'n v. County of Nassau*, 965 F.Supp. 376 (E.D.N.Y.1997) (addressing only the state law claims in deciding whether defendants exceeded their authority in enacting non-smoking regulations in an action brought under federal jurisdiction).

■ In *Leonard*, plaintiffs challenged regulations passed by the Dutchess County Board of Health that restricted certain public smoking. Those regulations appear to be quite similar to the regulations in this action. Plaintiffs alleged, in addition to state law claims, violations of the Equal Protection Clause and the Free Speech Clause. *Leonard*, 105 F.Supp.2d at 261. That Court held that none of the circumstances provided for in 28 U.S.C. § 1367(c) existed to cause the Court to decline supplemental jurisdiction: (1) no novel or complex issues of state law are raised because the New York Court of Appeals has addressed the issue to be decided; (2) the state law claim arises out of the same facts which form the basis of plaintiffs' federal claims; and, (3) the federal claims alleged are "neither immaterial or insubstantial"

and should be judged on the merits, not for want of jurisdiction. *Id.*, at 262. The Court did not note any exceptional circumstances that would compel declining jurisdiction. *Id.*

I find that plaintiffs' federal allegations are identical in nature to those of the plaintiffs in *Leonard*. This Court has subject matter jurisdiction over this action.

## II *Standard of Review*

Rule 56(c) of the Federal Rule of Civil procedure provides that the Court may grant summary judgment where there are no genuine issues of material fact for trial. If there are no genuine issues for trial, the movant is entitled to judgment as a matter of law. "An issue is genuine of the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On cross-motions for summary judgment, the standard is the same as that for individual motions. In evaluating each motion, the court must look at the facts in the light most favorable to the non-moving party. *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F.Supp. 826, 828 (S.D.N.Y.1996).

## III. *State Separation of Powers Claim*

Plaintiffs' claim that the Board, in enacting the regulations, violated the non-delegation doctrine, or separation of powers doctrine, embodied in the New York State Constitution.

■ Under the Public Health Law, boards of health are authorized to "formulate, promulgate, adopt and publish rules, regulations, orders and directions for the security of life and health in the health district which shall not be inconsistent with the provisions of this chapter and the sanitary code." N.Y.Pub. Health L. § 347. Any regulations promulgated by a board

pursuant to § 347 are subject to review "to determine whether they comport with the requirements of the state constitution." *Leonard,* 105 F.Supp.2d at 262; *Co–Pilot Enters., Inc. v. Suffolk Co. Dep't of Health,* 38 Misc.2d 894, 899–900, 239 N.Y.S.2d 248 (N.Y.Sup.1963).

The separation of powers doctrine of the New York State Constitution established boundaries between the actions of the Legislative and administrative agencies. The New York Court of Appeals has held the following:

> Because of the constitutional provision that "The legislative power of this State shall be vested in the Senate and the Assembly" (N.Y. Const., Art. III, § 1), the Legislature cannot pass on its lawmaking functions to other bodies ..., but there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature.... The delegation of power to make the law, which necessarily involves a discretion as to what it shall be, cannot be done, but there is no valid objection to the conferring of authority or discretion as to a law's execution, to be exercised under and in pursuance of it.

*Matter of Levine v. Whalen,* 39 N.Y.2d 510, 515, 384 N.Y.S.2d 721, 349 N.E.2d 820 (1976) (internal citations omitted).

Plaintiffs base their summary judgment argument on a New York Court of Appeals decision, *Boreali v. Axelrod,* 71 N.Y.2d 1, 8–9, 523 N.Y.S.2d 464, 517 N.E.2d 1350 (1987), in which the Court held that the state's Public Health Commission ("PHC"), an administrative agency, violated the non-delegation doctrine of the state Constitution in enacting regulations restricting smoking in indoor areas open to the public. Plaintiffs' argument is not one of first impression in the district courts of

the Second Circuit. No fewer than three district courts have applied *Boreali* to cases involving a local board of health's attempted regulation of smoking in public places, and each court has decided that the board overstepped its constitutional powers. *See Leonard,* 105 F.Supp.2d at 265–66, *Justiana,* 45 F.Supp.2d at 245; *Nassau Bowling,* 965 F.Supp. at 380. It is clear from the record that the Board was aware of at least *Boreali* and *Nassau Bowling* when it deliberated over the new smoking regulations [Pls.Ex. 6], and that the Board attempted to craft its deliberations and its public hearings in such a way that the regulations would pass judicial muster. However, the instant case not is not distinguishable.

## A. The *Boreali* Decision

In *Boreali,* the PHC promulgated regulations prohibiting smoking in a variety of public facilities. These regulations followed several failed attempts by state legislators to pass similar legislation. The New York Court of Appeals found the regulations invalid.

New York Public Health Law charges the board of health of a county with the enforcement of the provisions of Article 13–E. N.Y.Pub. Health L. § 1399–t(1). The article also provides that "[n]othing herein shall be construed to restrict the power of any county, city, town, or village to adopt and enforce additional local law, ordinances, or regulations which comply with at least the minimum applicable standards set forth in this article." *Id.* § 1399–r(3).

The *Boreali* Court found that the PHC, in enacting its restrictions on public smoking, had "stretched [the Public Health Law's authorization to regulate] beyond its constitutionally valid reach when it used the statute as a basis for drafting a code embodying its own assessment of what

public policy ought to be." *Id.* at 9, 523 N.Y.S.2d 464, 517 N.E.2d 1350. "The Court reasoned that even where an enabling statute delegating power to an agency is itself valid, the agency's actions pursuant to the enabling statute are invalid if the agency assumes that legislature's role of exercising 'the open-ended discretion to choose ends.'" *Justiana,* 45 F.Supp.2d at 243 (citing *Boreali,* 71 N.Y.2d at 11, 523 N.Y.S.2d 464, 517 N.E.2d 1350).

The *Boreali* court set forth four factors it considered in determining that the PHC, by adopting its new smoking regulations, transgressed "the difficult-to-define line between administrative rule making and legislative policy making:"

1. The PHC constructed a regulatory scheme laden with exceptions based solely upon economic and social concerns;

2. The PHC did not merely fill in the details of broad legislation describing the overall policies to be implemented, but instead, writing on a clean slate, created its own comprehensive set of rules without benefit of legislative guidance;

3. The PHC acted in an area in which the legislature had repeatedly tried—and failed—to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions; and

4. The PHC had no special expertise or technical competence.

*Id.,* 71 N.Y.2d at 12–14, 523 N.Y.S.2d at 470–71, 517 N.E.2d 1350.

▆ The Putnam County Board of Health made every effort to enact its anti-smoking regulations "around" *Boreali.* The question for this Court is whether the Board succeeded. I conclude that it did not.

### 1. The Board's Consideration of Non–Health Factors

Plaintiffs argue that the Putnam Board relied on non-health concerns in enacting its new smoking laws. It is clear that the Board was "acutely aware of the guidelines ... as set forth in *Boreali,*" [Def.Opp. and Cross–Motion, p. 2.], and conducted its deliberations with the professed intent of considering only health-related factors in promulgating these smoking regulations [*Id.*]. Nonetheless, plaintiffs assert that the regulations themselves indicate that social and economic concerns affected the exemptions and rules within the regulations.

Plaintiffs are correct. Defendants obviously considered social and economic factors in enacting these regulations, even if they did not outwardly profess to do so.

During the public hearings, many restauranteurs and other businessmen and businesswomen appeared before the Board to present evidence of the financial hardship that would result from the regulations. [Pls Exs. 8 – 10.] These speakers did not address the health concerns of secondhand smoke; they argued that the regulations would harm them economically; perhaps even put them out of business. [*Id.*] Others argued that such regulations were the job of the legislature, and not the Board. [*Id.*]

The Board was also aware of the non-health related concerns of the County Legislature. Minutes from the Health, Social, Educational & Environmental Committee, dated February 16, 1999 and March 16, 1999, are also in the record. [Pls.Exs. 2 & 3.] During these meetings of the legislative committee, Mr. Foley, the Public Health Director, appeared before the legislators to discuss the Board's proposed regulations. During these meetings, certain legislators commented on non-health related matters. For example, Legislator Koberger "stated that the Legislature is always

promoting 'business' in the County, and since owners of restaurants make a substantial investment in their businesses, they should have rights also." Legislator Koberger continued "that government in general tends to regulate too much of people's lives. The public should decide this issue by where they choose to spend their dollars when they go out to eat." [Pls.Ex. 3, p. 6.] Portions of these minutes were read to the entire Board on April 19, 1999 by Mr. Foley.

After hearing all of this economic evidence, the Board did not ban smoking in public places altogether. Rather it chose certain establishments where (1) smoking must be banned altogether [Section 7.4(A) ]; (2) smoking must be banned altogether unless a separate smoking room was built (restaurants with no bars, sports bars, convention centers) [Section 7.4(B)(2), (3), (7) ]; (3) smoking must be banned unless a separate smoking room or bar area with floor to ceiling partitions existed (restaurants with bars, bingo halls, pool halls and bowling centers) [Section 7.4(B)(1), (4), (5), (6) ]; (4) smoking is permitted in all bars and taverns, except that minors may not be allowed inside the premises without a parent or guardian (bars or taverns) [Section 7.4(B)(8)]; and, (5) smoking is permitted absolutely (all buildings holding private social functions) [Section 7.8(D) ].

The selective restrictions enacted by the Board reveal that the health of the residents of Putnam could not have been its sole concern. Had it been, the Board would have banned smoking in public places altogether. By enacting a compromise measure—one that tempered its strong concern about health with its unstated but real worries about commercial health—the Board necessarily took into account non-health considerations. Judged by what it did rather than by what it said, the Board's stated rationale evaporates. As Judge Conner found in *Leonard:* "Although the record here is clear of references *by defendants* to non-health concerns in the minutes of regular Board meetings, the regulations themselves belie a compromise between social, economic, privacy and health concerns." *Id.* at 265.

Interestingly, section 7.4 of the Board's regulations entitled "Regulation of Environmental Tobacco Smoke in Public Places" is nearly identical to Section 4 of the Niagara County Board of Health's regulations entitled "Regulation of Smoking in Public Places." Both regulations prohibit smoking in all public places within the County, unless otherwise provided for in the regulation. [Putnam Reg., § 7.4(A); Niagara Reg., § 4(a).]

The subsection at issue in this action mandates that the dining area of restaurants with bars, sports arenas, bingo halls, pool halls, bowling centers and convention centers must be smoke free. [Putnam Reg., § 7.4(b)(1), (3), (4), (5), (6) & (7).] In these places, "[s]moking may be allowed within bar areas provided the bar area is not the sole patron waiting area, is separated from all other areas by a floor to ceiling partition and is ventilated such that secondhand tobacco smoke from the bar area does not enter other areas in the facility." *Id.* "Separate Smoking Rooms may also be provided." *Id.* The regulations in Justiana are extremely similar. [Niagara Reg., § 4(b)(1), (4), (5), (6) & (7).] The regulations also provide that restaurants without bars must be completely smoke free, although a separate smoking room may be provided. [Putnam Reg., § 7.4(B)(2).; Niagara Reg., § 4(a)(2).] These regulations explicitly permit smoking in bars and taverns. [Putnam Reg., § 7.4(B)(8); Niagara Reg., § 4(b)(3).] The Putnam Regulations prohibits minors under the age of 18 from entering a bar or

tavern unless accompanied by a parent or guardian, or an adult authorized as a parent or guardian. These regulations also explicitly permit smoking in any private social function. [Putnam Reg., § 7.8(D); Niagara Reg., § 6(d).]

Three federal courts in the Second Circuit, interpreting New York law, have now struck down similar (and in the case of *Justiana,* practically identical) regulations on the basis that the county boards exceeded the powers vested in them by the Public Health Law. These decisions were based, in part, on the county boards' consideration of non-health-related factors. *Leonard,* 105 F.Supp.2d at 265; *Justiana,* 45 F.Supp.2d at 236; *Nassau Bowling,* 965 F.Supp. at 380.

### 2. The Board Did Not Merely Fill in the Details of Existing Legislation

The second *Boreali* consideration is whether the Board has exceeded its authority by writing on "a clean slate" rather than using its regulatory power to fill in the details of a legislative scheme.

Plaintiffs argue that the Board went far beyond its regulatory powers in creating its own comprehensive set of rules regarding the regulation of smoking. Defendants argue that the Board was simply filling in the interstices of the Clean Indoor Air Act's provisions.

Defendants have failed to distinguish their actions from those of the administrative bodies in *Boreali, Nassau Bowling, Justiana,* and *Leonard.* In all four previous cases, the Courts found that the administrative bodies, in enacting regulations strikingly similar to those enacted by the Board, "did not merely fill in the details of broad legislation describing over-all-policies to be implemented," but, instead, "created its own comprehensive set of rules without the benefit of legislative guidance."

*Boreali,* 71 N.Y.2d at 13, 523 N.Y.S.2d at 470, 517 N.E.2d 1350.

Article 7 of the Putnam County Sanitary Code is much more restrictive than article 13–E of the Public Health Law. For example, where Article 13–E exempts the bar area of a food service establishment from regulation [N.Y.Pub. Health L. § 1399–n(5) ], Article 7 states that "Smoking may be allowed within bar areas provided the bar area is not the sole patron waiting area, is separated from the dining area by a floor to ceiling partition and is ventilated such that secondhand tobacco smoke from the bar area does not enter other areas in the facility, including the dining area." Article 7 did not fill in any details of Article 13–E; rather, it departed from Article 13–E, and destroyed the exemption created by the State Legislature. *See Leonard,* 105 F.Supp.2d at 267 (finding that the identical Dutchess County regulation restricting smoking in bar areas of restaurants "departed from merely following legislative guidance and went forward into a legislating foray all its own"); *Justiana,* 45 F.Supp.2d at 245 ("By adopting [smoking] regulations that are substantially more restrictive than existing legislation, the [Niagara County] Board [of Health] went beyond interstitial rule-making and into the realm of legislating.").

### 3. The County Legislature's Failure to Act

The third *Boreali* factor is whether the regulations concern "an area in which the Legislature had repeatedly tried—and failed—to reach agreement in the face of substantial public debate." *Boreali,* 71 N.Y.2d at 13, 523 N.Y.S.2d 464, 517 N.E.2d 1350. In *Leonard,* the Court found that the Dutchess County Board of Health, in enacting its regulations, "interceded to perform a legislative function the County

Legislature could not, or would not, perform." *Leonard,* 105 F.Supp.2d at 268.

There is no evidence in the record that the Putnam County Legislature ever tried to pass a law further restricting smoking. It is clear, however, that the Legislature did not do so in order to avoid the "political heat" from such an action, and to maintain a neutrality on the issue of smoking regulations. [Pls.Exs. 2 & 3.] The Legislature may not refuse to act on a controversial matter, and surrender its legislative powers to the County Board. The Legislature is the proper arm of the government to enact laws that restrict smoking and affect the livelihoods of certain businessmen and women within its County.

4. Expertise in the Field of Health Was Not Required

The fourth, and final, *Boreali* factor requires the Court to determine whether the creation of the regulations required expertise in the field of health.

Plaintiffs argue that no special expertise was required to devise the smoking restrictions in the regulations. The courts in *Boreali, Nassau Bowling, Justiana* and *Leonard* concurred with this argument. Defendants ask this Court to disagree with these courts, and conclude that the Board consists of a designated body of experts in the field of public health, and exercised its medical and scientific expertise in creating these regulations.

I will not depart from the reasoning of my colleagues in the New York State Court of Appeals and in the district courts of the Second Circuit. As the Court found in *Justiana,* "it is well known to those outside the scientific community that [secondhand smoke] exposure may lead to the development of serious health problems." *Id.,* 45 F.Supp.2d at 245. Moreover, the fact that the Putnam County smoking regulations mimic the regulations drafted by the Niagara County and Dutchess County Departments of Health, weakens even further the Board's argument that it used its medical expertise in crafting these regulations.

In conclusion, the Board, in enacting the smoking regulations in Article 7 of the Putnam County Sanitary Code, exceeded its authority as a state administrative agency, and is in violation of the New York State Constitution's separation of powers doctrine.

IV *Federal Constitutional Claims*

A. Equal Protection Claim

 In their Complaint, plaintiffs allege that the Board's regulations are unconstitutional because they violate plaintiffs' rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs argue that the regulations "expressly and unequivocally provide unequal and adverse treatment under the law to restaurants and bowling centers, as compared to bars and taverns .... and to facilities in which private social functions are held." [Cmplt., ¶¶ 62 & 63.] Plaintiffs argue that there is no rational basis to support this unequal treatment.

Plaintiffs' equal protection claim is without merit. Applying a rational basis review to this claim, I conclude that the regulations were rationally related to the goal of protecting the public from the dangers of secondhand smoke. *See Justiana,* 45 F.Supp.2d at 242. The Board did not act irrationally in its promulgation of the regulations.

B. First Amendment Claim

Plaintiffs allege that the Board's regulations are unconstitutional as violative of plaintiffs' rights as guaranteed by the Free Speech Clause of the First Amendment. Plaintiffs argue that in enacting the regu-

lations, the Board "force[d] plaintiffs to endorse a message with respect to the dangers of secondhand smoke which they do not wish to endorse." [Cmplt., ¶ 71.] This enforcement, plaintiffs argue, "violates plaintiffs' right to choose not to participate in [the] dissemination of an ideological message by displaying it on their private property." [Id., ¶ 71.]

Defendants argue that the regulations' requirement of posting signs is the same as the requirement found in the State Clear Indoor Act (§ 1399–p), which has passed constitutional muster. See Fagan v. Axelrod, 146 Misc.2d 286, 550 N.Y.S.2d 552. Furthermore, defendants argue that the requirement of posting a sign concerning the dangers of secondhand smoke is not "ideological" at all, but, rather, is a scientifically proven fact. [Def.Opp. and Cross–Motion, p. 11.]

 Section 7.9, entitled "Posting of Signs," requires the posting of "No Smoking" signs or symbols in much the same fashion as the constitutional provisions in Section 1399–p. This provision, therefore, does not violate any of plaintiffs' constitutional rights. Fagan, 146 Misc.2d 286, 550 N.Y.S.2d 552. Section 7.5 of the regulations goes beyond the scope of the State Clean Indoor Act. Section 7.5 of the regulations, entitled "Protection of Minors," states:

> Whenever smoking is permitted under the terms of this Article, including but not limited to a Separate Smoking Room, minors (patrons and/or employees) under eighteen (18) years of age shall not be permitted in these areas. Entrance to these areas shall be prominently posted with a sign which reads: "Due to recognized health risks to children from secondhand smoke and current Health Department regulations, we cannot allow minors under the age of 18 into this room." The Putnam County

Health Department shall provide such signs.

Nothing in this provision violates plaintiffs' rights to free speech. Neither party has presented any evidence on the merits of the speech rights at issue, but there is nothing before this court to supports the argument that a sign stating that there are health risks to children from secondhand smoke is an "ideological" message.

Although defendants did violate the New York Constitution's separation of powers doctrine in enacting their invalid regulations, they did not violate the Equal Protection Clause or the Free Speech Clause of the Federal Constitution.

## V. Severability of the Regulations

Defendants argue that the severability provision in the regulations (Section 7.15) permits this Court to "invalidat[e] only the objectionable exceptions without questioning the validity of the adopted ban on smoking." [Def.Opp. and Cross–Motion, p. 24.] Plaintiffs argue that the regulations are invalid in their entirety because the Board exceeded its authority as an administrative agency in its enactment of the regulations. [Pls. Reply, pp. 6–7.]

 I agree with plaintiffs. I have concluded that the Board exceeded its authority in considering non-health related factors in crafting the regulations. The Board's violation of the separation of powers doctrine makes the regulations invalid in their entirety. The district courts within the Second Circuit concur with this decision. See Nassau Bowling, 965 F.Supp. at 381 (enjoining defendants from enforcing the entire ordinance); Justiana, 45 F.Supp.2d at 245 (same); Leonard, 105 F.Supp.2d at 268 (same).

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is granted

and defendants' cross-motion is denied. Defendants are permanently enjoined from enforcing Article 7 of the Putnam County Sanitary Code.[1]

SO ORDERED

---

1. The parties (and those similarly situated in other counties) are advised that this Court is unwilling to be a party to future efforts to evade CPLR Article 78 review by entertaining claims that belong in the state courts after dismissing spurious and meritless federal "claims" which are amended solely to confer jurisdiction on this Court. Should similarly meritless "federal" challenges to local action find their way before this judge, I will have no compunction about declining to exercise supplemental jurisdiction.